726 S.E.2d 396

**REBUILD AMERICA, INC., a Florida corporation, and Reo America, Inc., a Florida corporation, Defendants Below, Petitioners**

v.

**Mark E. DAVIS, Tammy L. Davis, and Huntington National Bank, N.A., Plaintiffs Below, Respondents**

and

**Mike Rutherford, Sheriff of Kanawha County, and Vera McCormick, Clerk of the County Commission of Kanawha County, Defendants Below, Respondents.**

No. 11–0592.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 2012.

Decided March 1, 2012.

Mark E. Davis, Charleston, WV, pro se.

Tammy L. Davis, Charleston, WV, pro se.

Philip B. Hereford, Esq., Hereford & Riccardi PLLC, Christopher S. Smith, Esq., Hoyer Hoyer & Smith PLLC, Charleston, WV, for Huntington National Bank.

James W. Lane, Jr., Esq., Lane Law Office, O. Gay Elmore, Esq., Elmore & Elmore, Charleston, WV, for Rebuild America, Inc., and Reo America, Inc.

Marc J. Slotnick, Esq., Bailey & Wyant PLLC, Herschel H. Rose, III Esq., Steven R. Broadwater, Esq., Rose Law Office, Charleston, WV, for Mike Rutherford, Sheriff, and Vera McCormick, Clerk.

KETCHUM, Chief Justice:

The petitioners, Rebuild America, Inc., and REO America, Inc. ("Rebuild/REO"), appeal from the final order of the Circuit Court of Kanawha County which set aside a tax deed delivered by the Clerk of the Kanawha County Commission. For the reasons set forth below, the order of the circuit court is reversed, and this matter is remanded for further proceedings consistent with this Opinion.

## I.

### Background[1]

On December 20, 2003, Mark E. Davis and his wife, Tammy L. Davis, purchased two adjoining parcels of real estate located at 51 Woodbridge Drive, Charleston, Kanawha County, West Virginia ("the property"). Shortly thereafter, the Davises opened a personal credit line with Huntington National Bank, N.A., ("Huntington Bank"). On April 7, 2004, Huntington Bank recorded a "Credit Line Deed of Trust" encumbering the property in the office of the Clerk of the Kanawha County Commission ("Clerk"). The Davises then used the credit line to construct a new home on the property.

The Davises failed to pay the 2005 real estate tax for the property, resulting in a statutory tax lien for the delinquent taxes. On May 11, 2006, the Kanawha County Sheriff ("Sheriff") published in newspapers of general circulation in Kanawha County a notice that the real property tax on the Davises' property was delinquent.[2] Subsequent to that notice, on July 12, 2006, the Davises filed for Chapter 7 bankruptcy.

On September 13, 2006, the Sheriff published a second notice of the Davises' tax delinquency.[3] This notice warned that unless the delinquent real property taxes were paid, the tax lien on the property would be sold at public auction. In addition to this publication, the Sheriff sent the notice of the delin-

---

1. The evidentiary record in this appeal is "barebones." Absent from the record are the tax deed and all documentation required by *W.Va.Code*, 11A–3–27 [2010], to be filed with the tax deed (*i.e.*, a tax sale certificate, assignment of the certificate, the notice to redeem, the return for service of the notice to redeem, and the certified mail return receipts). Additionally absent are any bankruptcy pleadings, or even the bankruptcy discharge order. These items, at a minimum, were essential to the trial court's ability fully to address the issues presented by the Davises' lawsuit.

Given the sparseness of the evidentiary record, we caution that our summary of the background of this appeal is largely drawn from the parties' assertions. In oral argument, Huntington Bank's lawyer continually stated we could assume facts. Assertions and assumptions of the lawyers and *pro se* litigants are not evidence. Accordingly, this summary *should not be construed by any party, or any court*, to be findings of this Court.

2. The publication was made pursuant to *W.Va. Code*, 11A–2–11 [1967], and 11A–2–13 [2006].

3. This publication is required by *W.Va.Code*, 11A–3–2 [2007].

quency and public auction by certified mail to the Davises on October 13, 2006.[4] It is asserted that four days later, on October 17, 2006, the Davises' bankruptcy petition was granted and a Chapter 7 discharge order entered.

Shortly after the asserted bankruptcy discharge, the certified letters to the Davises were returned to the Sheriff undelivered, with a notation on the envelopes that the United States Postal Service was unable to forward the letters. The Sheriff made no further effort to ascertain the Davises' correct mailing address, or to notify the Davises of the impending public auction of the tax lien on their property. The Davises contend that they never received notice of the impending sale of the tax lien.

On November 14, 2006, the Sheriff sold the tax lien and a tax sale certificate[5] was issued to the purchaser[6] of the tax lien. The sale of the tax lien began the statutory time period—approximately eighteen months—that the Davises, or Huntington Bank, could redeem the property by paying the delinquent taxes and other costs, and thereby protect their ownership rights, or interest, in the property.

In December 2007, the property remained unredeemed. Acting pursuant to the requirements of *W.Va.Code*, 11A-3-19 [2010], the tax lien purchaser requested that it be granted a tax deed to the Davises' property. As part of this request, the tax lien purchaser provided the Clerk of the Kanawha County Commission ("Clerk") with a list of the names and addresses of all persons and entities entitled to be served with a notice to redeem. The Davises and Huntington Bank were included on this list.

In January 2008, the Clerk, by certified letters, sent notices to redeem to the Davises and to Huntington Bank. These notices stated that a tax deed for the Davises' delinquent property had been requested, and that a tax deed would be delivered on or after April 1, 2008, unless an amount equal to the taxes, interest, and charges due was paid on or before March 31, 2008. The Clerk allegedly sent Huntington Bank certified letters at several addresses. Huntington Bank allegedly signed return receipts evidencing proper service of the notice to redeem. However, these return receipts were not made part of the record. Furthermore, the Clerk allegedly sent certified letters to Mr. and Mrs. Davis. However, it is alleged that the return receipts show that Mrs. Davis signed both the return receipt for the certified letter addressed to her, and the return receipt for the certified letter addressed to Mr. Davis. These return receipts also were not made part of the record.

The parties do not dispute that the property was not redeemed by the date set forth in the redemption notice, and that on April 14, 2008, the Clerk delivered a tax deed conveying the Davises' property to the tax lien purchaser, or assignee thereof.[7] On May 24, 2008, the Davises received a letter from Rebuild/REO requiring that they either vacate the property or contact Rebuild/REO about

**4.** Sending the notice by certified mail is required by subsection (b) of *W.Va.Code*, 11A-3-2.

**5.** *W.Va.Code*, 11A-3-14 [2010], sets forth the contents required to be in a tax sale certificate.

**6.** The identity of the tax lien purchaser is unclear from the record.

**7.** In her answer to the Davises' complaint, the Clerk admitted that she did make and issue a deed to "Rebuild America, Inc., and by assignment to Sass Muni, Grantee, which deed conveyed said property to Grantee." Sass Muni is not a party to the lawsuit to set aside the tax deed. At argument on this appeal, we inquired of counsel why Sass Muni should not be considered an indispensable party since, according to the Clerk's answer to the Davises complaint, Sass Muni was the record owner of the property. Responding to our query, counsel informed this Court that the Clerk was wrong, that Sass Muni was the tax lien purchaser, but had assigned its interests to Rebuild pursuant to *W.Va.Code*, 11A-3-15. As if to "prove" this point, counsel then read the tax deed to us at argument. We are an appellate court, and the introduction of evidence at this level is inappropriate. However, this said, counsel's reading of the tax deed made apparent that an issue exists as to the grantee of the tax deed. The caption of the deed, as read by counsel, purports that Rebuild, as assignee of Sass Muni, was the grantee. However, when counsel read further into the tax deed, it appears that the granting clause actually names REO as the grantee. Counsel for Huntington Bank then stated that the deed is confusing. Upon remand, this issue should be resolved.

reacquiring ownership of the property. The Davises then contacted the Sheriff's Office and spoke with a tax deputy about Rebuild/REO's letter. The Davises allege that the tax deputy informed them that the tax lien on their property should not have been sold because of the bankruptcy protection afforded to them at the time, but that the Davises could only obtain relief through the Circuit Court of Kanawha County.

On June 2, 2008, the Davises, who were self-represented, filed a civil action in the Circuit Court of Kanawha County to set aside the tax deed. Named as defendants were, *inter alia*, the Sheriff, the Clerk, and Rebuild/REO. The complaint, captioned as "Complaint, Motion to Nullify Property Sale, Motion to Set Aside Tax Deed, Motion for Injunction to Stop Eviction," set forth several allegations, including that the Davises had been in bankruptcy. The Davises assert that the Sheriff was aware of their bankruptcy because the Sheriff coded the Davises' former Chappel Road property with a "BR7" code on their account, which is an internal coding used by the Sheriff's office to identify property involved in a bankruptcy proceeding. However, a similar code was not placed on the Davises' Woodbridge Drive property (which is the property at issue in this appeal), even though the latter address is where the Davises had lived for a number of years.

In the Sheriff's answer to the Davises' complaint, the Sheriff admits that he sold the tax lien on the Davises' Woodbridge Drive property, that the "BR7" code was not listed on the account associated with the Woodbridge Drive property, and that representatives of his office did tell the Davises on May 30, 2008, and again on June 2, 2008, that the Woodbridge Drive property "should not have been sold, because of [the] bankruptcy protection afforded to [the Davises]."

On May 5, 2010, Huntington Bank sent a notice to the parties that a hearing had been scheduled for June 24, 2010 ("June 24 hearing"); however, the notice did not identify the purpose for the hearing or the relief sought (we discuss this hearing notice, and the June 24 hearing, in greater detail in Section III, *infra.*). At the conclusion of the June 24 hearing, the trial court ruled that a sufficient basis had been established for granting the Davises' "motion to set aside the tax sale," and to have "title in the property restored to the [Davises]." In its final order, the trial court held that the tax lien sale "should not have been held because of the [Davises] Chapter 7 Bankruptcy filed on July 12, 2006, and the failure to provide proper notices to the [Davises] at the property address." No evidence was presented as to a petition in bankruptcy, or a bankruptcy discharge. Additionally, the trial court made no findings of fact or conclusions of law in the final order explaining why the tax lien sale could not go forward because of bankruptcy proceedings, or why the Sheriff's and/or Clerk's notices were insufficient.

A motion to reconsider filed by Rebuild/REO was subsequently denied, and this appeal followed.

## II.

### Standard of Review

Rebuild/REO assert that they were prejudiced by the trial court's consideration of issues at the June 24 hearing that were not properly noticed. Rebuild/REO also assert that the trial court, in setting aside the tax deed, applied the wrong legal analysis for a lawsuit filed under *W.Va.Code*, 11A–4–4 [1994]. We have previously held that "[a]bsent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard," Syllabus Point 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995), and that "questions of law and statutory interpretation are subject to *de novo* review." Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

## III.

### Discussion

There are four issues raised by this appeal. First, we discuss Huntington Bank's inadequate hearing notice, which resulted in an unfair hearing. Second, we clarify the relevant inquiry that a trial court must make

when hearing a lawsuit seeking to set aside a tax deed under *W.Va.Code,* 11A–4–4 [1994]. Third, we address the conclusory nature of the trial court's final order on the issue of the Davises' bankruptcy, and the lack of evidence in the record to support any of the trial court's findings. Last, we discuss our conclusion that the trial court erred by failing to make a preliminary finding as required by *W.Va.Code,* 11A–4–4 [1994], before it set aside the tax deed.

## A. Sufficiency of Huntington Bank's June 24 Hearing Notice

■ Rebuild/REO contend that they went to the June 24 hearing believing the only issue to be addressed involved the Davises' bankruptcy. However, at the hearing, Huntington Bank asserted that the tax deed should be set aside because the Davises were not properly served with the statutory notice that a tax lien on their property would be sold at public auction. Rebuild/REO argues that they were not prepared to address whether the Davises had been properly served with notice of the tax lien sale because that issue was not set forth in Huntington Bank's hearing notice or memorandum of law. Rebuild/REO point out that Huntington Bank's memorandum of law, listed in the hearing notice, did not address the failure to serve the tax lien notices. Instead, the memorandum focused on the single issue of bankruptcy.

Reviewing the June 24 hearing transcript, we note that counsel for Huntington Bank—when responding to Rebuild/REO's arguments—informed the trial court that he "initially set [the hearing] for a status conference." He later discussed the nature of the hearing with Rebuild/REO's counsel, and told counsel that the issues in the case were "so ripe" and "around for so long," that he was just going to go ahead and "notice it up, and ... *bring a motion* on for the hearing, what's before the court and not just a status conference." However, Huntington Bank did not file a written motion stating the grounds for the motion, or the relief being sought, as

required by Rule 7(b) of the West Virginia Rules of Civil Procedure.

Rule 7(b) of the *West Virginia Rules of Civil Procedure,* in relevant part, states:

(b) *Motions and Other Papers.*

(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, *shall state with particularity the grounds therefor, and shall set forth the relief or order sought.* The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion. (Emphasis added.).

We find merit in Rebuild/REO's argument that it did not receive a fair hearing. Huntington Bank's notice did not contain a motion, and only stated that a hearing would be held on the following:

1. Complaint, motion to nullify property sale, motion to set aside tax deed, motion for injunction to stop eviction.

2. Memorandum of [Rebuild/REO] in objection to relief sought by [the Davises] to set aside the tax sale and restore legal title in real property to [the Davises].

3. Response of [Huntington Bank] to the memorandum of [Rebuild/REO] in objection to the relief sought by [the Davises] and brief in support of response of [Huntington Bank] to the memorandum of [Rebuild/REO] in support of objection to the relief sought by [the Davises].

Huntington Bank's hearing notice failed to meet the requirements of Rule 7. Huntington Bank did not file a motion setting out the grounds for a motion or the relief sought. Additionally, the Davises' *pro se* "complaint/motion"—notwithstanding its caption—contains no motions seeking any type of relief. As a consequence, Rebuild/REO were denied a fair hearing when Huntington Bank introduced a new issue without notice at the June 24 hearing. Rebuild/REO were also denied a fair hearing based on Huntington Bank's unilateral decision to "change" the nature [8] of the June 24 hearing from a

---

**8.** At the hearing, when it became clear that some confusion existed as to the day's order of business, the trial court informed the parties that her docket had the hearing down as "a status confer-

ence, slash, scheduling conference." This coincides with the statement made by counsel for Huntington Bank that he had originally set the hearing as a status conference, but later decided

status conference to a hearing on the merits of the case. To have a fair hearing, Rebuild/REO, and the Davises,[9] were entitled to a proper hearing notice, a proper motion seeking relief, and the opportunity to develop the relevant facts. *See McDougal v. McCammon*, 193 W.Va. 229, 237, 455 S.E.2d 788, 796 ("one of the purposes of the ... Rules of Civil Procedure is to eliminate surprise. Trial by ambush is not contemplated by the Rules of Civil Procedure[.]").

Accordingly, we find that the trial court erred by considering, at the June 24 hearing, issues relating to the sufficiency of the Sheriff's service of one or more of the tax delinquency/lien/sale notices required by statute.[10]

### B. Failure to Receive Notice of the Tax Lien Sale

The trial court set aside Rebuild/REO's tax deed, in part, on the basis that the Sheriff mailed the Davises' tax lien sale notices to the wrong property address. This is not the correct legal analysis to be applied by a trial court when considering a lawsuit to set aside a tax deed under *W.Va.Code*, 11A-4-4 [1994].[11]

For purposes of this discussion, and to address the arguments made by the Davises and Huntington Bank, we begin by noting that notices in a tax deed case fall into two categories: notices required before sale of a tax lien at public auction, and notices required after sale of a tax lien at public auction.

### 1. The Two Categories of Notices

The first category of notices are those required to be made by a sheriff *before* selling a tax lien at public auction. In the first category ("pre-sale notices"), the sheriff is required to:

(1) publish a list of delinquent real estate as a Class I-0 advertisement, *W.Va.Code*, 11A-2-13,

(2) make a second publication of delinquent real estate as a Class III-0 legal advertisement, with this notice stating that the tax lien for the delinquent taxes would be sold at public auction at a time, date and place specified in the notice, *W.Va. Code*, 11A-3-2, and

(3) mail a certified letter to the landowner, and others specified by statute, of the tax delinquency and that the tax lien for that delinquency will be sold at public auction at a certain date, time, and place, unless the delinquency is redeemed, *W.Va.Code*, 11A-3-2(b) [2007].

The second category of notices are those required to be made *after* sale of the tax lien. In the second category (post-sale notices), three additional notices are required where the delinquent property is classified as Class II property at the time of assessment.[12] These notices are:

(1) that the sheriff, within one month of the sale of a tax lien at public auction, make a Class II-0 publication of the tax lien sale, notifying the landowner, and other persons or entities entitled to notice, that they could still pay the taxes and redeem the property, *W.Va.Code*, 11A-3-13 [2006],

---

to "bring a motion on for the hearing, what's before the court and not just a status conference."

**9.** We include the Davises here because it is important to note that while it may well be that there is a commonality of interests between the Davises and Huntington Bank in the case below, and this appeal, the Davises are entitled to the same notice as any other party.

**10.** This case illustrates the importance of taking the time to make sure that hearing notices, which are often mistakenly perceived as little more than boiler plate *pro forma* blurbs, clearly state the nature of the hearing, what is to be addressed at the hearing, and what relief is being requested at the hearing.

**11.** *W.Va.Code*, 11A-4-4 [1994], in relevant part, emphasis added, states:

If any person entitled to be notified under the provisions of [*W.Va.Code*, 11A-3-22] *is not served with the notice as therein required*, and does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property, he, his heirs and assigns, may, before the expiration of three years following the delivery of the deed, institute a civil action to set aside the deed.

**12.** Pursuant to *W.Va.Code*, 11-8-5 [1969], Class II property is all "property owned, used and occupied by the owner exclusively for residential purposes[.]"

(2) that the Clerk prepare and serve a notice to redeem. The notice to redeem informs the landowner, and others entitled by statute to notice, that a tax deed had been requested by the tax lien purchaser, but that the landowner and others still had the right to redeem the property by paying the amounts due by the time specified in the notice. The notice to redeem also informs the landowner, and others, that if the delinquent taxes are not redeemed by the time set forth in the notice, a tax deed would be delivered to the purchaser of the tax lien. *W.Va.Code*, 11A–3–21 [2010], and (3) that the Clerk, when the tax delinquency is for real property that was classified as residential at the time of assessment, forward a copy of the notice to redeem by first class mail to the physical address of the property and addressed to "Occupant." *W.Va.Code*, 11A–3–22(d).

As we discuss below, it is *only* the notice to redeem required in the second category that is relevant in a lawsuit to set aside a tax deed under *W.Va.Code*, 11A–4–4 [1994].

### 2. *The Davises' and Huntington Bank's Arguments*

The Davises and Huntington Bank assert that they did not receive any of the pre-sale notices (first category) sent by the Sheriff which would have informed them of the real property tax delinquency, or that a tax lien on the Davises' property was about to be sold at public auction. Huntington Bank introduced the affidavit of the Sheriff's Chief Tax Deputy which purports to "confess error" by acknowledging that the Sheriff's Office mistakenly sent the pre-sale notices to an old address for the Davises. The affidavit also states that the notices were returned to the Sheriff's Office by the post office with a notation that they were undeliverable as addressed, and that the Sheriff made no further efforts to obtain the correct mailing address for the Davises.

■ The Davises and Huntington Bank argue that the Sheriff, as a consequence of his failure to properly serve the Davises with one or more of the pre-sale notices, lacked authority to sell the tax lien on the Davises' property. They contend that since the Sheriff improperly sold the tax lien in the first instance, then any tax deed ultimately delivered following that sale must be set aside. We reject this argument.[13]

### 3. *Fallacy of the Argument*

Even were we to assume, *arguendo*, that the Davises did not receive any of the pre-sale notices, a cause of action to set aside the tax deed under *W.Va.Code*, 11A–4–4, would not exist. The precise argument made by Huntington Bank and the Davises is addressed in *W.Va.Code*, 11A–3–2(b), which—discussing the pre-sale notification that the sheriff must send by certified mail—states, in relevant part, that:

> In no event shall failure to receive the mailed notice by the landowner or lienholder affect the validity of the title of the property conveyed if it is conveyed pursuant to [*W.Va.Code*, 11A–3–27]. . . .

The Legislature could not have more plainly stated its intent—a tax deed will not be set aside on the ground that a landowner or lienholder did not receive the Sheriff's pre-sale tax lien notice (sent by certified mail) if the post-sale redemption notice was properly served, and the statutory process was followed when conveying the tax deed. As opposed to the arguments made by Huntington Bank and the Davises, the real issue that the trial court needed to determine was whether the post-sale statutory process was followed and the tax deed for the Davises' property conveyed pursuant to *W.Va.Code*, 11A–3–27 [2010].

*W.Va.Code*, 11A–3–27, provides that a tax deed will not be delivered unless the post-sale notice to redeem was properly served and, despite such service, the property was not redeemed. In fact, the form deed contained in § 27 states:

> Whereas, The [Clerk] has caused the notice to redeem to be served on all persons required by law to be served therewith; and

---

**13.** The fact that the statutory tax sale process may have been followed does not mean that constitutional due process has been satisfied.

However, the Davises and Huntington Bank have not raised a "due process" violation.

Whereas, The tax lien(s) on the real estate so purchased has not been redeemed in the manner provided by law and the time for redemption set in such notice has expired[.]

 *W.Va.Code*, 11A–3–22 [2010], specifies the method that must be used in serving the notice to redeem. Subsection (b), which is applicable to the facts of this case, states:

The notice shall be served upon all persons residing or found in the state in the manner provided for serving process commencing a civil action or by certified mail, return receipt requested. The notice shall be served on or before the thirtieth day following the request for the notice.[14]

Contrary to Huntington Bank's and the Davises' arguments, it is the post-sale notice to redeem that is the relevant inquiry in a lawsuit filed under *W.Va.Code*, 11A–4–4, and not one of the pre-sale notices.

### 4. The Proper Legal Analysis in Lawsuits to Set aside a Tax Deed under W.Va.Code, 11A–4–4 [1994]

We find that the trial court erred when it held that the failure to serve the Davises with the pre-sale tax delinquency/lien/sale notices constituted a basis for setting aside the tax deed. In a lawsuit filed under *W.Va. Code*, 11A–4–4, a tax deed may be set aside only upon a finding by a trial court that the notice to redeem required by *W.Va.Code*, 11A–3–21 [2010], was not properly served.

 Accordingly, we hold that a tax deed is not invalidated on the basis that a person or entity failed to receive notice of the tax lien sale required by *W.Va.Code*, 11A–3–2 [2007], where it is proven that: (1) the subsequent redemption notice required by *W.Va. Code*, 11A–3–21 [2010], was served on all persons and entities entitled to notice, (2)

service of the notice to redeem was perfected in the manner required by *W.Va.Code*, 11A–3–22 [2010], (3) the property was not redeemed within the time period set out in the redemption notice, and (4) a tax deed, meeting the requirements of *W.Va.Code*, 11A–3–27 [2010], was delivered to the tax lien purchaser or assignee thereof.

### 5. Burden of Proof

 A final point we address on this issue is the burden of proof, specifically, who has the burden to prove that the notice to redeem was properly served. The tax deed delivered by the Clerk extinguished the Davises' rights and ownership in the property, as well as Huntington Bank's alleged lien for its Deed of Trust. The Davises and Huntington seek to set aside that tax deed under *W.Va.Code*, 11A–4–4. Our law is clear that in a suit for cancellation of tax deed, the tax deed grantee has the burden of proving compliance with the statutory steps required, including the validity of statutory notice of application for tax deed. *See e.g.*, Syllabus Point 1, *Dickerson v. Flanagan*, 103 W.Va. 233, 136 S.E. 854 (1927) ("Where the statute authorizes the publication and posting of a notice, which affects property rights, the steps directed by the statute must be strictly pursued. The burden of showing such pursuance is on him who would profit by such notice."). *See also Gates v. Morris*, 123 W.Va. at 9, 13 S.E.2d at 475 ("The burden was on the tax deed grantee . . . to prove the validity of . . . notice."). Our law is also clear that "[t]he owner cannot be deprived of his land by sale thereof for taxes unless the procedure prescribed by the statute, strictly construed, is substantially complied with." Syllabus Point 1, *Koontz v. Ball*, 96 W.Va. 117, 122 S.E. 461 (1924).

---

**14.** The parties have not raised an issue concerning the manner of service of the notice to redeem. However, from the record it appears that an issue may exist that should be addressed on remand. The transcript of the June 24, 2010, hearing reveals that the Clerk elected to serve the notice to redeem on each of the Davises by certified mail, return receipt requested. Counsel for the Clerk stated at the hearing that Mrs. Davis signed for the certified letter addressed to her husband. Proper service of the notice to redeem is a jurisdictional issue that should be addressed on remand. *See* Syllabus Point 1, *Koontz v. Ball*, 96 W.Va. 117, 122 S.E. 461 (1924) ("The owner cannot be deprived of his land by sale thereof for taxes unless the procedure prescribed by the statute, strictly construed, is substantially complied with."). *See also Gates v. Morris*, 123 W.Va. 6, 11, 13 S.E.2d 473, 476 (1941) ("Generally want of notice required by statute is a 'jurisdictional defect' which cannot be cured by statute") (citations omitted).

On remand, Rebuild/REO—whichever of the two is the actual grantee of the tax deed—must prove that it followed the specific requirements set forth in *W.Va.Code,* 11A–3–19 [2010], and that the notices to redeem were properly served as required by *W.Va.Code,* 11A–3–22(b) [2007].[15]

## C. Bankruptcy Issues

The Davises and Huntington Bank contend that an automatic stay issued in the Davises' bankruptcy case barred the Sheriff from taking any further action on the tax lien while the stay remained in effect. Rebuild/REO argue that the automatic stay did not prohibit the Sheriff from making publication of the tax lien auction, or sending the Davises the pre-sale notices required by *W.Va.Code,* 11A–3–2(b).

Rebuild/REO, and Huntington Bank, filed memoranda of law on the bankruptcy issue prior to the June 24 hearing. At the hearing, Rebuild/REO and Huntington Bank presented oral arguments in support of their respective positions. In its final order, the trial court found that because of the Davises' Chapter 7 bankruptcy, the sale of the tax lien should not have occurred and, therefore, that the tax deed was void. No evidence of the bankruptcy, the bankruptcy petition, or discharge in bankruptcy were introduced into evidence. In addition, the trial court set forth no findings of fact or conclusions of law to show the reasoning and law applied to reach this conclusion.[16]

The absence of findings of fact and conclusions of law in the trial court's final order is reversible error. *See, e. g., Nestor v. Bruce Hardwood Flooring, L.P.,* 206 W.Va. 453, 457, 525 S.E.2d 334, 338 (1999) ("We conclude ... that the circuit court committed reversible error by granting ... judgment without including sufficient findings of fact and conclusions of law in its final order."); *Ayersman v. West Virginia Division of Environmental Protection,* 208 W.Va. 544, 547, 542 S.E.2d 58, 61 (2000) ("circuit court committed reversible error by granting ... judgment without including sufficient findings of fact and conclusions of law in its final order.").

Accordingly, the trial court's finding that the Davises' bankruptcy barred the Sheriff from selling the tax lien is reversed. Upon remand, the trial court should afford the parties the opportunity to develop and present evidence on what effect, if any, the Davises' Chapter 7 bankruptcy had on the tax lien.[17]

## D. Proper Procedure to Set

15. The trial court also erred by adopting, as evidence, the parties' assertions as to what the evidence would show. An assertion by a lawyer or *pro se* litigant, orally or in legal memorandums, is not evidence. There is no evidence in the record before us upon which the trial court could have made a finding as to whether the Davises and Huntington Bank were properly served with the notice to redeem. The notice to redeem is not in the record, nor for that matter are other important items of evidence, such as the returns for the notices to redeem, the tax deed, the assignment of the tax sale certificate, and Rebuild/REO's application to the Clerk for the tax deed.

The absence of evidence in the record is, we believe, in large part due to the fact that the case was not in a procedural posture—despite Huntington Bank's belief that the case was "ripe" for decision—for trial on the merits. Discovery was ongoing, and issues remained undeveloped. We have held that "[t]his Court, in the exercise of its appellate jurisdiction, will reverse a finding of fact made by a trial court if it appears that such finding of fact is not supported by competent evidence." Syllabus Point 4, *Boggs v. Settle,* 150 W.Va. 330, 145 S.E.2d 446 (1965). Were we not reversing on other grounds, we would have been compelled to reverse on the basis that there is no competent evidence in the record upon which the trial court could have made its findings.

16. The final order also found that Huntington Bank "holds a valid and enforceable *purchase money* first deed of trust on the property." While it is asserted that a Deed of Trust was executed between the Davises and Huntington Bank, there was no evidence presented at the June 24 hearing to support this finding. It is unclear on what authority Huntington Bank included the finding of a first lien trust deed in the final order (which it drafted). In its briefs, Huntington Bank asserts that it has a "credit line deed of trust," not a *purchase money first* deed of trust.

17. Because the record and arguments before us are insufficiently developed to fully address the issue, we offer no opinion on the merits of any of the parties' arguments on the bankruptcy issue and leave that initial determination to be made by the trial court (supported by appropriate findings of fact and conclusions of law).

### Aside Tax Deed[18]

While we reverse the trial court's order for the reasons discussed above, we also note that we would have been compelled to reverse on the basis of a procedural error involving the manner in which the tax deed was set aside. *W.Va.Code*, 11A–4–4, identifies a specific procedure that trial courts must follow when a tax deed is to be set aside, which includes making a preliminary finding *before* setting aside a tax deed. The trial court did not make a preliminary finding.

■ Reviewing the statutorily proscribed procedure, we hold that before a trial court may enter a final order setting aside a tax deed pursuant to *W.Va.Code*, 11A–4–4 [1994], the trial court must make a preliminary finding that the tax deed will be set aside if, within thirty days of the entry of the preliminary finding, there is paid or tendered to the tax deed purchaser, or his heirs or assigns: (1) the amount of money that would have been required to redeem the property, (2) the amount of real estate taxes paid on the property since delivery of the deed, and (3) interest at the rate of twelve percent per annum. If these amounts are not paid or tendered to the tax deed purchaser within thirty days of entry of the preliminary findings, the trial court, upon the request of the tax deed purchaser, must enter an order dismissing the case seeking to set aside the tax deed.[19]

## IV.

### Conclusion

The trial court's order is reversed and this case is remanded for proceedings consistent with this Opinion.[20]

Reversed and Remanded.

Justice DAVIS, deeming herself disqualified, did not participate.

Judge PANCAKE, sitting by temporary assignment.

---

**18.** For a discussion on setting aside a tax deed based on an erroneous assessment, and the effects of the 1994 Legislative amendments relating to tax sales of real property, *see MZRP, LLC v. Huntington Realty Corporation*, No. 35692 (W.Va. Supreme Court, March 10, 2011) (Memorandum Decision).

**19.** *W.Va.Code*, 11A–4–4 [1994], is unique in its requirement that a trial court make a preliminary finding. A lawsuit filed under *W.Va.Code*, 11A–4–2 [1994], 11A–4–3 [1994], or a petition filed under *W.Va.Code*, 11A–4–6, does not require a preliminary finding.

**20.** On remand, the trial court must address, among the other issues before it: (1) whether the Davises' tax lien was discharged in bankruptcy, preventing sale of the tax lien, (2) the effect of the automatic stay issued in the Davises' bankruptcy case, and (3) whether the Davises, and Huntington Bank, were properly served with the notice to redeem required by *W.Va.Code*, 11A–3–21, and in the manner required by *W.Va.Code*, 11A–3–22.