760 S.E.2d 487

**Don MASON and Brenda
Mason, Petitioners**

**v.**

**Raymond Richard SMITH; Maria Catalano; Jeremy D. Casto; Jerad D. Casto; Robert M. Fletcher; The Poca Valley Bank, Inc.; Sunrise Atlantic, LLC; and Harpagon MO, LLC, Respondents.**

**No. 13–0957.**

Supreme Court of Appeals of
West Virginia.

Submitted May 6, 2014.

Decided June 10, 2014.

Charles M. Love, IV, Esq., The Love Law Firm, PLLC, Marvin W. Masters, Esq., The Masters Law Firm, lc, Charleston, WV, for Petitioners Don Mason and Brenda Mason.

Stephen L. Thompson, Esq., Barth & Thompson, Charleston, WV, for Respondents Maria Catalano, Jeremy D. Casto and Jerad D. Casto.

Sprague W. Hazard, Esq., The Bell Law Firm, PLLC, Charleston, WV, for Respondent Robert M. Fletcher.

Michael T. Chaney, Esq., Kay Casto & Chaney PLLC, Charleston, WV, for Respondent The Poca Valley Bank, Inc.

PER CURIAM:

In this tax sale matter, petitioners Don Mason and Brenda Mason ("Masons") challenge the July 23, 2013, order of the Circuit Court of Kanawha County invalidating their deed to a parcel of real estate in Elk District, Kanawha County. Also invalidated were the deeds of the Masons' predecessors in title,

respondent Sunrise Atlantic, LLC ("Sunrise") and respondent Harpagon MO, LLC ("Harpagon"). The deeds were invalidated because Sunrise, the tax lien purchaser, failed to serve the record owners of the property, Maria Catalano, Jeremy D. Casto and Jerad D. Casto ("Catalanos"), with the statutorily required notice to redeem the property before the issuance of the tax deed. The order of the circuit court, restoring title to the Catalanos was made subject to the Catalanos paying the amounts required by statute to redeem the property.

The July 23, 2013, order, in the form of a partial summary judgment in favor of the Catalanos, arose from consolidated actions described below concerning the Elk District property. Accordingly, the circuit court approved the order for appeal to this Court pursuant to Rule 54(b) of the *West Virginia Rules of Civil Procedure*.[1]

The Masons ask this Court to reverse the order and remand their claim of ownership of the property for trial. The Masons contend that questions of material fact exist concerning whether the Catalanos, in fact, received notice of the tax sale and notice to redeem. Moreover, the Masons contend that, as bona fide purchasers of the property, their deed should not have been invalidated.

Upon review, this Court finds the Masons' contentions to be without merit. Consequently, we affirm the July 23, 2013, order granting partial summary judgment in favor of the Catalanos.

## I. Factual Background

In June 2001, the Catalanos purchased a parcel of real property located at 5024 Elk River Road South, Elk District, for $65,000.00. The Catalanos recorded the deed in the office of the Clerk of the County Commission of Kanawha County. In April 2006, the Catalanos sold the property to Raymond Richard Smith ("Smith") for $68,000.00. The deed to Smith, containing a

general warranty, was never recorded. Consequently, the Catalanos remained the owners of record. Moreover, at the time of the Catalanos' conveyance to Smith, the 2005 real property taxes were delinquent and were listed in the names of Maria Catalano, Jeremy D. Casto and Jerad D. Casto.

On November 14, 2006, the Sheriff of Kanawha County sold the tax lien on the property for the delinquent 2005 taxes. The tax lien, in the name of the Catalanos, was purchased by Sunrise for $1,900.00. Subsequently, by tax deed made April 9, 2008, the Clerk of the County Commission conveyed the property to Sunrise. The deed to Sunrise was recorded.

A number of documents, including the following, were recorded with the tax deed from the County Clerk to Sunrise:

1. A certificate of sale signed by the Sheriff stating that the tax lien, sold in the name of the Catalanos, was purchased by Sunrise for $1,900.00. *See W.Va.Code*, 11A–3–14(a) [1998] (Upon payment of "at least the amount of taxes, interest and charges for which the tax lien on any real estate is offered for sale," the sheriff shall issue to the purchaser a certificate of sale for the purchase money.).[2]

2. A notice to redeem dated January 26, 2008, signed by the Clerk of the County Commission showing the amount of payment necessary to redeem the property to avoid the issuance of a tax deed to the tax lien purchaser. The notice to redeem states that the tax lien was delinquent in the name of the Catalanos.

3. The November 1, 2007, application of Sunrise to the Clerk of the County Commission for a tax deed. The application stated that, based on a title examination, the following were to be served with notice to redeem: (1) The Poca Valley Bank, Inc., (2) Maria Catalano, (3) Jeremy

---

1. Pursuant to Rule 54(b) of the *West Virginia Rules of Civil Procedure*, an otherwise interlocutory order may be designated as final for appeal purposes. Rule 54(b) states, in part, that a circuit court

   may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination

that there is no just reason for delay and upon an express direction for the entry of judgment.

2. That statute, and several others cited herein, have been subsequently amended. The amendments, however, are not applicable in the current matter.

D. Casto and (4) Jerad D. Casto. Smith, who had purchased the property from the Catalanos, was not listed.[3]

4.  A certified mail return card showing that on January 29, 2008, The Poca Valley Bank, Inc. (the Catalanos' lender and holder of a deed of trust on the property), received the notice to redeem.

5.  Certified mail envelopes from the Clerk of the County Commission sent to the Catalanos, individually, in January 2008 showing "return to sender—not deliverable as addressed—unable to forward" or "return to sender—unclaimed—unable to forward." None of the envelopes were marked "refused." The envelopes contained notices of the right to redeem the property and, thus, showed that the Catalanos did not receive the notices.

By quitclaim deed made May 16, 2008, Sunrise, the tax lien purchaser, conveyed the property to Harpagon. The deed, stating that the transfer was "between related entities without consideration," was recorded. Soon after, by special warranty deed made June 13, 2008, Harpagon conveyed the Elk District property to Don Mason. Brenda Mason is the wife of Don Mason. The Masons paid $32,000.00 for the property and recorded the deed.

## II.  Procedural Background

In February 2009, Raymond Richard Smith, who purchased the property from the Catalanos for $68,000.00, filed an action in the Circuit Court of Kanawha County, styled *Smith v. Catalano, et al.*, no. 09–C–203. Smith alleged that the Catalanos breached the general warranty in the deed he received from them because the delinquent 2005 taxes resulted in the Sheriff's sale of the property to Sunrise. In addition, Smith sought damages from the Poca Valley Bank and Robert M. Fletcher, the attorney Smith believed closed the sale concerning his purchase. Smith's action was consolidated with the current matter and is not directly involved in the partial summary judgment from which the Masons now appeal.

On April 7, 2011, the Catalanos filed a complaint in the Circuit Court of Kanawha County against Sunrise, Harpagon and the Masons, styled *Catalano, et al., v. Sunrise Atlantic, LLC, et al.*, no. 11–C–565. The Catalanos asserted that, as the owners of record, they were entitled to notice of the right to redeem the property from the tax sale, particularly to protect the interest of their grantee, Raymond Richard Smith, whose deed had never been recorded. The Catalanos asserted that they were never provided with the required notice to redeem the property before the tax deed was delivered to Sunrise. The complaint alleged:

> The [Catalanos] did not have actual knowledge of the tax sale until 2008 and were unable to redeem the Property, or advise Smith to redeem the Property which he now owned from sale, all to the [Catalanos'] detriment, because they were not provided with notice from Sunrise Atlantic of the right to redeem the Property from sale.

The Catalanos asked the circuit court to set aside the tax deed to Sunrise and the subsequent conveyances to Harpagon and the Masons.[4]

---

3.  The application to the Clerk for a tax deed contained a reference to *W.Va.Code*, 11A–3–19. *W.Va.Code*, 11A–3–19(a) [1998], states, in part:

> At any time after the thirty-first day of October of the year following the sheriff's sale, and on or before the thirty-first day of December of the same year, the purchaser, his or her heirs or assigns, in order to secure a deed for the real estate subject to the tax lien or liens purchased, shall: ... Prepare a list of those to be served with notice to redeem and request the clerk to prepare and serve the notice as provided in sections twenty-one and twenty-two of this article....

4.  The Catalanos alleged in the complaint that, pursuant to *W.Va.Code*, 11A–4–4(a) [1994], they tendered to the Masons all amounts required to redeem the property from the tax sale. The Catalanos asked the circuit court to determine which party should ultimately receive that payment. *W.Va.Code*, 11A–4–4(a) [1994], states, in part:

> No deed shall be set aside under the provisions of this section until payment has been made or tendered to the purchaser, or his heirs or assigns, of the amount which would have been required for redemption, together with any taxes which have been paid on the property since delivery of the deed, with interest at the rate of twelve percent per annum.

*Accord* syl. pt. 2, *Rebuild America, Inc. v. Davis*, 229 W.Va. 86, 726 S.E.2d 396 (2012).

During the ensuing litigation, the Masons filed a cross-claim against Sunrise seeking recovery upon any failure by Sunrise, as the tax lien purchaser, to provide notice to redeem the property in a reasonable and prudent manner. The Masons also filed a cross-claim against Harpagon alleging that, if it is determined that the Catalanos may redeem the property, the Masons can recover from Harpagon for breach of warranty.

In February 2012, the Catalanos moved for partial summary judgment. In their supporting memorandum, the Catalanos asserted:

> Here, the Catalanos continued to be "the owner" "of record" as of the time of both the tax sale as well as of the time of the giving of the notice of the right to redeem. As such, they clearly were, and are, entitled to effective notice of the right to redeem the property from sale.... Because the deed to Smith was not recorded, one searching the records in the Kanawha County Clerk's Office would lack any notice thereof, would have no way of knowing of its existence, or of the need to contact Smith in order that he receive notice of the right to redeem.

The circuit court conducted a summary judgment hearing on October 31, 2012, during which counsel for the Catalanos stated that the Catalanos had not received any information that any other party had been provided with the notice to redeem. In that regard, the transcript of the hearing contains no indication that the Poca Valley Bank (the Catalanos' lender) informed the Catalanos that the Bank had received a notice to redeem the property.[5]

On July 23, 2013, the circuit court entered an order granting partial summary judgment in favor of the Catalanos. The circuit court noted that the determinative issue was the right of the Catalanos to receive a notice to redeem and whether the notice to redeem

was provided to them in the manner required by law before the tax deed was delivered. Thus, the circuit court concluded that, as the owners of record and in view of their obligation under the general warranty deed to Smith to make sure that the 2005 taxes were paid, the Catalanos were entitled to the notice to redeem the property from the tax sale. In fact, the November 1, 2007, application of Sunrise to the Clerk of the County Commission for a tax deed stated that the Catalanos were entitled to the notice to redeem.

The Catalanos never received the notice to redeem. The certified mail envelopes containing their individual notices to redeem, sent to the addresses listed on Sunrise's application, were returned "not deliverable as addressed" or "unclaimed." None of the envelopes were marked "refused." As the circuit court found, Sunrise, the tax lien purchaser, did not attempt personal service of the notice to redeem upon the Catalanos in the manner provided for service of process in a civil action. Moreover, Sunrise chose not to ask the Clerk to cause notice of the right to redeem to be published in any local newspaper.

Granting partial summary judgment in favor of the Catalanos, the circuit court invalidated the tax deed to Sunrise, the tax lien purchaser, and the subsequent deeds conveying the property to Harpagon and the Masons. Title was restored to the Catalanos, subject to a final disposition of the amounts to be paid by the Catalanos to redeem the property.

The Masons' appeal to this Court followed.

### III. Standards of Review

■ Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure*, summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party

---

5. At the summary judgment hearing, the Bank's counsel stated:

> When that notice of the right to redeem was received by the bank the transaction between the Catalanos and Mr. Smith had already closed. The lien, the debt to the bank, had already been paid in full. At that point, they had no reason to think that there was any

> problem or any reason for them to get involved because there was no outstanding debt.... And, again, while the bank may have received notice of the right to redeem that doesn't satisfy the obligation of the purchaser at the tax sale to ensure that the other parties who are entitled to that notice also receive the notice.

is entitled to a judgment as a matter of law." As a result of that plain language, this Court's standards of review concerning summary judgment have become well settled. Syllabus point 3 of *Aetna Casualty and Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), holds: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Accord* syl. pt. 1, *Coleman Estate v. R.M. Logging, Inc.*, 222 W.Va. 357, 664 S.E.2d 698 (2008).

In syllabus point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that a circuit court's entry of summary judgment "is reviewed *de novo.*" Nevertheless, as this Court stated in syllabus point 3 of *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997):

> Although our standard of review for summary judgment remains *de novo*, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

*Accord* syl. pt. 3, *Coleman Estate v. R.M. Logging, Inc.*, 222 W.Va. 357, 664 S.E.2d 698 (2008). Finally, syllabus point 1 of *West Virginia Department of Transportation v. Robertson*, 217 W.Va. 497, 618 S.E.2d 506 (2005), observes: "Appellate review of a partial summary judgment order is the same as that of a summary judgment order, which is *de novo.*" *Accord* syl. pt. 1, *Noland v. Virginia Insurance Reciprocal*, 224 W.Va. 372, 686 S.E.2d 23 (2009).

## IV. Discussion

The Masons seek a reversal of the partial summary judgment on the ground that questions of material fact exist concerning whether the Catalanos, in fact, received notice of the tax sale and notice to redeem. The Masons emphasize that the Catalanos knew of the 2005 tax delinquency when they conveyed the property to Raymond Richard

Smith. In fact, Maria Catalano testified during her December 2010 deposition that she received notification of a forthcoming tax sale by the Kanawha County Sheriff. She did not pass that information on to Smith or to the Poca Valley Bank. However, it should be noted that Ms. Catalano testified that she called the tax department in the Sheriff's office and informed the department that she had sold the property.

As the circuit court correctly noted, the Catalanos' knowledge of the 2005 delinquency and the impending tax sale by the Sheriff is not dispositive. The issue before the circuit court was the right of the Catalanos to receive the notice to redeem before the delivery of the tax deed and whether the notice to redeem was provided to them in the manner required by law. *See Rebuild America supra*, 229 W.Va. at 92, 726 S.E.2d at 402 (Notices in a tax deed case fall into two categories: "notices required before sale of a tax lien at public auction, and notices required after sale of a tax lien at public auction.").

Chapter 11A, article 3, of the *West Virginia Code* concerning the sale of tax liens, includes a declaration of legislative policy in *W.Va.Code*, 11A–3–1 [1994], recognizing the public liability associated with delinquent land. However, the declaration also recognizes the right of land owners "to adequate notice and an opportunity for *redemption*" before divestment for failure to pay taxes. (emphasis added)

Here, Sunrise, the tax lien purchaser, completed an application for a tax deed which stated that the Poca Valley Bank and the Catalanos were to be served by the Clerk of the County Commission with notice of the right to redeem the property. The preparation by the tax lien purchaser of a list of those to be served is required by *W.Va.Code*, 11A–3–19(a) [1998]. *See* n. 3 *supra*. That statute, in turn, refers to *W.Va.Code*, 11A–3–21 [1998] (setting forth the form for the notice to redeem following a tax sale), and *W.Va.Code*, 11A–3–22 [1995] (providing the manner of service of the notice).

Pursuant to *W.Va.Code*, 11A–3–22 [1995], notice of the right to redeem shall be served

upon all persons named on the list prepared by the tax lien purchaser. *W.Va.Code*, 11A–3–22 [1995], further provides, in part:

The notice shall be served upon all such persons residing or found in the state in the manner provided for serving process commencing a civil action or by certified mail, return receipt requested....

If the address of any person entitled to notice, whether a resident or nonresident of this state, is unknown to the purchaser and cannot be discovered by due diligence on the part of the purchaser, that notice shall be served by publication.... If service by publication is necessary, publication shall be commenced when personal service is required as set forth above, and a copy of the notice shall at the same time be sent by certified mail, return receipt requested, to the last known address of the person to be served.

Moreover, Chapter 11A, article 4, of the *West Virginia Code* provides a number of remedies concerning the sale of delinquent land. The relevant statute in article 4 concerning this appeal is *W.Va.Code*, 11A–4–4 [1994], which states, in part:

(a) If any person entitled to be notified under the provisions of section twenty-two ... article three of this chapter is not served with the notice as therein required, and does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property, he, his heirs and assigns, may, before the expiration of three years following the delivery of the deed, institute a civil action to set aside the deed....

(b) No title acquired pursuant to this article shall be set aside in the absence of a showing by clear and convincing evidence that the person who originally acquired such title failed to exercise reasonably diligent efforts to provide notice of his intention to acquire such title to the complaining party or his predecessors in title.[6]

According to Sunrise's application for a tax deed, the Clerk was directed to serve the notice to redeem upon Maria Catalano, Jeremy D. Casto and Jerad D. Casto, individually, at the following West Virginia addresses: (1) Post Office Box 912, Clendenin, (2) 5024 Elk River Road South, Elkview, and (3) 634 McNabb Drive, Elkview. Sunrise did not attempt personal service upon the Catalanos in the manner provided for commencing a civil action; nor was notice attempted by publication. Instead, Sunrise chose to use certified mail.

The evidence reveals that the Catalanos resided in this State during the 2008 period of attempted service upon them by certified mail. Nevertheless, although it is possible that the Catalanos, at times, might have been found at the addresses listed in Sunrise's application for a tax deed, the evidence supports the conclusion that Sunrise made no effort to locate them and that the Catalanos did not receive the notices and were not aware of any efforts to deliver the notices.

In 2001, the Catalanos closed Post Office Box 912 and moved to 5024 Elk River Road South. A request was made to forward the mail to the new address. In 2005, Maria Catalano moved to 634 McNabb Drive. The following year, the property at 5024 Elk River Road South (the subject of the tax sale to Sunrise) was conveyed by the Catalanos to Raymond Richard Smith. In 2009, Ms. Catalano moved to Ripley, West Virginia, and requested that mail be forwarded to the Ripley address. She denied any knowledge of the notice to redeem.

After the sale to Raymond Richard Smith, Jeremy D. Casto moved to the Mink Shoals area of Charleston, West Virginia, and, in 2007, was residing in Ripley. He requested that mail be forwarded to his Ripley address. Finally, the evidence demonstrates that Jerad D. Casto was incarcerated at the West Virginia Central Regional Jail from July 2007 through March 2008. Both Jeremy D. Casto and Jerad D. Casto denied any knowledge of the notice to redeem.

---

6. The Catalanos' action to set aside the tax deed to Sunrise, and the subsequent deeds to Harpagon and the Masons, was filed on April 7, 2011, within three years of the April 9, 2008, conveyance to Sunrise, the tax lien purchaser. More-over, there is no evidence that the Catalanos were aware that the Poca Valley Bank had received a notice to redeem the property. *See* n. 5 *supra*. Thus, the Catalanos' action was timely filed under *W.Va.Code,* 11A–4–4 [1994].

The certified mail envelopes sent to the Catalanos at the addresses listed on Sunrise's application for a tax deed were returned "not deliverable as addressed" or "unclaimed." None of the envelopes were marked "refused." The brief filed by the Catalanos accurately states:

When the notices of the right to redeem the property from sale which had been sent to the Catalanos at various locations were returned as being undeliverable or unclaimed—and not as having been refused by them—the tax sale purchaser *failed to take a single additional step* to attempt to notify the Catalanos of their right to redeem.

(Emphasis added).

As the owners of record during the redemption period, the Catalanos were entitled to the notice to redeem. Syllabus point 1 of *Wells Fargo Bank v. UP Ventures II*, 223 W.Va. 407, 675 S.E.2d 883 (2009), states, in part:

Under *W.Va.Code*, 11A–3–19(a), a tax sale purchaser is required to provide notice *to parties who are of record* at any time after the thirty-first day of October of the year following the sheriff's sale, and on or before the thirty-first day of December of the same year.

(Emphasis added). *Accord* syl., *Reynolds v. Hoke*, 226 W.Va. 497, 702 S.E.2d 629 (2010).

However, the certified mail envelopes returned "not deliverable as addressed" or "unclaimed" constituted insufficient notice to the Catalanos of the right to redeem the property from the tax sale. *See* syl. pt. 2, *Burkes v. Fas–Chek Food Mart Incorporated*, 217 W.Va. 291, 617 S.E.2d 838 (2005) ("[S]ervice of process or notice upon a domestic corporation through the Secretary of State is insufficient when a registered or certified mailing of the process or notice is neither accepted nor refused by an agent or employee of the corporation."); syl., *Crowley v. Krylon Diversified Brands*, 216 W.Va. 408, 607 S.E.2d 514 (2004) (Service of process on a corporation is insufficient where registered or certified mail thereof is returned "undeliverable.").

In *Rebuild America, supra*, this Court stated that, in an action for cancellation of a tax deed, "the tax deed grantee has the burden of proving compliance with the statutory steps required." 229 W.Va. at 94, 726 S.E.2d at 404. Here, Sunrise made no effort to secure notice to the Catalanos beyond the unsuccessful certified mailings. The Catalanos' correct addresses were reasonably ascertainable and could have been confirmed through the exercise of due diligence. However, the Catalanos never received notices to redeem their property.

Although addressing the notice of a tax sale, rather than notice of the right to redeem, syllabus point 1 of *Lilly v. Duke*, 180 W.Va. 228, 376 S.E.2d 122 (1988), is instructive:

There are certain constitutional due process requirements for notice of a tax sale of real property. Where a party having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party *be provided notice by mail or other means as certain to ensure actual notice.*

(Emphasis added). *Accord* syl. pt. 1, *Anderson v. Jackson*, 180 W.Va. 194, 375 S.E.2d 827 (1988).

There are no questions of material fact with regard to the failure to serve the Catalanos with the notices to redeem. Accordingly, this assignment of error is without merit.

Finally, the Masons contend that they purchased the Elk District property for value and without notice of any defects in the title. Accordingly, the Masons argue that they were bona fide purchasers and that the Catalanos are precluded from redeeming the property. Stated differently, the Masons contend that the partial summary judgment should be reversed because, at a minimum, questions of material fact remain unresolved concerning the Masons' status as bona fide purchasers.

The evidence tends to support the Masons' assertion that, when the property was conveyed to Don Mason by Harpagon in 2008, the Masons were unaware that Raymond Richard Smith had previously bought the property, the deed for which was never re-

corded. Moreover, the fact that the Masons received a special warranty deed from Harpagon, or that their purchase price for the property was relatively low, would not necessarily deprive the Masons of bona fide purchaser status. The Masons, however, did not conduct a title examination prior to purchasing the property.

 In granting partial summary judgment in favor of the Catalanos, the circuit court cited syllabus point 4 of *Simmons v. Simmons*, 85 W.Va. 25, 100 S.E. 743 (1919), which is still good law:

> Generally whatever is sufficient on the face of the record of title to land to direct a purchaser's attention to the prior rights and equities of third persons will put him upon an inquiry and will amount to notice to him. He is bound to take notice of everything disclosed by the record.

If the Masons had conducted a title examination at the time of purchase, at least two serious problems would have been discovered. First, at the time of the conveyance from Harpagon to Don Mason on June 13, 2008, the prior quitclaim deed from Sunrise to Harpagon had not been recorded. The quitclaim deed from Sunrise to Harpagon was not recorded until September 15, 2008. Consequently, Harpagon had no "record title" to convey to the Masons when they bought the property.

Second, an examination of the title for the same year, 2008, would have revealed the Clerk's April 9, 2008, tax deed conveying the property to Sunrise. Documents attached to the recorded tax deed included (1) the certificate showing the sale of the tax lien to Sunrise, (2) the notice to redeem, (3) the application of Sunrise for a tax deed and (4) the return card showing that the Poca Valley Bank had received the notice to redeem. However, also recorded with the tax deed were the certified mail envelopes marked "not deliverable as addressed" or "unclaimed," showing that the Catalanos did not receive the notice to redeem.

Those problems at the time of purchase, *i.e.*, the absence of a recorded conveyance from Sunrise to Harpagon and the documentation that the Catalanos had not been served with the notice to redeem, were easily discoverable had the Masons examined the title to the property they were purchasing. The circuit court was correct in finding that the Masons were not bona fide purchasers.

### V. Conclusion

The July 23, 2013, order of the Circuit Court of Kanawha County granting partial summary judgment in favor of the Catalanos is affirmed.

Affirmed.