# CHARLESTON.

SULLIVAN v. SAUNDERS et als.

Submitted February 2, 1909.   Decided December 1, 1909.

1. JUDGMENT—*Payment—Note of Third Person.*
   A note taken by a judgment creditor in consideration of his judgment, although made by a person not bound by the judgment, will not extinguish the judgment without an agreement by the creditor that the note is to operate as a payment. (p. 351).

2. MORTGAGES—*Purchase of Mortgaged Property—Merger of Estates.*
   When a trust deed creditor buys the trust subject and takes a conveyance therefor from his debtor, his lien is not thereby so merged in his estate as to make his entire estate in the land subject to an intervening lien; equity will preserve the trust lien for his protection, notwithstanding he may have executed a formal release of it.   (p. 352).

3. SAME.
   Such trust deed lien will be kept alive by a court of equity in favor of a grantee of such purchaser also, where no injustice will be done thereby.   (p. 352).

Appeal from Circuit Court, Cabell County.

Bill by John Sullivan against R. L. Saunders and others. Decree for plaintiff, and defendants L. W. Simpson and C. C. Rhodes appeal.

*Reversed and Remanded.*

*Geo. J. McComas,* for appellants.

*C. S. Welch,* for appellee.

WILLIAMS, JUDGE:

This is a suit to enforce the lien of a judgment in favor of John Sullivan against five-eighths of an acre of land formerly owned by R. L. Saunders, one of his judgment debtors, and now owned by C. C. Rhodes.   Previous to the judgment Saunders had given a deed of trust on the land, which was duly recorded, to secure a debt he owed to L. W. Simpson, and later conveyed the equity of redemption to Simpson.   Simpson then conveyed the land to Rhodes and, later, executed a release of his trust deed lien.   Sullivan then brought his suit against

Saunders, Simpson and Rhodes, and on the 17th of September, 1907, a decree was made renting the land to pay the judgment. From this decree Simpson and Rhodes have appealed.

On May 13, 1897, Sullivan recovered a judgment in a justice's court against Geo. M. McDermitt, Gordon O'Beirn, R. L. Blackwood, W. G. Seiger, H. L. Kirtley and R. L. Saunders for the sum of $242.08, which was docketed on the 22nd of June, 1897. On the same date of the docketing of the judgment, Seiger gave his note to Sullivan for the amount of the judgment, payable one month after date at the Huntington National Bank, endorsed by E. M. Greene and E. M. Cobb, strangers to the judgment. Various sums were paid on this note at different times, until July 18, 1898, at which time there appeared to be due a balance of $200.00, and for this amount Cobb and Greene executed to Sullivan their individual notes for $100.00 each. Greene paid his note, but Cobb failed to pay any part of his. This note, with its interest, represents the balance claimed by plaintiff on his judgment; and the purpose of this suit is to enforce collection of this amount, as a lien upon the land above mentioned.

Appellants insist that the acceptance of this note from one of the judgment debtors by Sullivan for the amount of his judgment, with endorsers thereon who were strangers to the judgment, and the subsequent acceptance of the two notes by the individual endorsers, operated as a payment, and release, of the judgment. Was the note a payment of the judgment? This is one of the points presented for decision. Mr. Sullivan testifies that these notes were not taken in payment of the judgment, but were only intended as collateral security therefor. The settled rule in England and in most of the States of the Union is that, where a new obligation is taken in consideration of a prior one, it does not operate as a payment, or satisfaction of the old obligation, unless such was the agreement or intention of the creditor, notwithstanding the new obligation binds new parties. The question whether, or not, it operates as a novation of the old debt is one of intention by the creditor; and the burden of proving that such was his intention rests upon the one who asserts it. This rule applies in cases where the original obligation and the subsequent one are of equal dignity; it has even greater force in cases where

the original obligation is of greater dignity than the new one. In the present case the notes did not operate to discharge the judgment; there is no evidence that Sullivan consented, or agreed, to treat the notes as payment. Consequently, the acceptance of them by Sullivan did not operate to discharge the lien of his judgment. 30 Cyc. 1194-1197; *Cushwa* v. *Improvement Ass'n.*, 45 W. Va. 490; *Feamster* v. *Withrow*, 12 W. Va. 611; *Barnetts* v. *Miller*, 23 Grat. 551; *Coles* v. *Withers*, 33 Grat. 186; *Gilbert* v. *Washington &c. R. R. Co.*, *Idem* 586; *Karn* v. *Blacksford*, 20 S. E. (Va.) 149; *McGuire* v. *Godsby*, 3 Call. 234.

On January 9, 1899, more than two years after the judgment had been obtained and docketed, Saunders and wife, by deed with covenants of general warranty, conveyed the land to L. W. Simpson; the consideration recited being $300.00. The proof shows that the actual consideration for the deed was the debt secured by the deed of trust, and a small amount of money besides; the exact amount of money is not proven. It is also proven that the $300.00 recited in the deed was the true amount of the consideration.

On February 13, 1899, Simpson and wife conveyed the land to C. C. Rhodes, with covenants of general warranty of title, the consideration recited in the deed being $250.00; and on the 27th of November, 1900, the lien of the trust deed was formally released by Simpson.

The decree found the amount then due on the judgment to be $148.50, which the court held to be a valid and subsisting lien upon the land, and decreed that, unless the debt was paid by Saunders, or some one for him, within thirty days, the land should be rented. The decree does not expressly decide that the trust deed lien is extinguished; nor does it expressly subordinate the right of Rhodes in the land to the extent of said lien, to plaintiff's judgment. But it does so in effect, because it directs the renting of the property to pay the balance due on the judgment, without regard to the prior trust lien.

The trust deed lien in favor of Simpson is not extinguished, in equity, by the conveyance of the land to him, so as to let in a junior lienor in preference to him; neither is the land in the hands of Rhodes rendered liable in any greater extent to the payment of plaintiff's judgment than it would have been

if the land had still remained in the hands of Saunders, the judgment debtor  The trust lien should be treated as still existing, and Rhodes is entitled to the benefit of it.   The general rule of law is, that where the holder of a lien upon land afterwards acquires the legal title, the lien is merged in his estate, and is extinguished.   But the rule is subject to exceptions, and courts of equity will not follow it when justice requires the lien to be perserved in order to protect a right.   Simpson's trust lien was superior to plaintiff's judgment lien.   Why should he be in a worse position after becoming the owner of the land on which his lien existed than he was before; or why should Rhodes, his grantee, be put in any worse position than Simpson himself would have been, had he remained the owner?   There is no good reason why Simpson's lien should not be considered as still existing; indeed it must be so considered in order to do justice in this case.   There is a clear equity here in favor of upholding the lien of the trust deed and preventing a merger of the lien with the legal estate afterwards acquired by Simpson from Saunders; and this equity attaches to the estate in the hands of Simpson's grantee, Rhodes.   The fact that the lien was formally released on the record by Simpson after he had conveyed the property to Rhodes does not destroy the equity; no one was misled thereby to his prejudice.   The supreme court of New Hampshire, in the case of *Staunton* v. *Thompson,* 49 N. H. 272, says: "Whether the mortgage shall be kept on foot or not depends, ordinarily, upon the intention of the parties, but in order to protect the mortgage against an intervening title, the law will uphold the mortgage, even when the parties had undertaken to discharge it, unless injustice would be done thereby."   To the same effect are the following authorities: 4 Kent's Com. 102; 2 Pom. Eq. Jur., section 734; *Kanawha Valley Bank* v. *Wilson,* 29 W. Va. 645; *Brockenbrough* v. *Brockenbrough,* 31 Grat. 580; *Powell* v. *Bell's Admr.,* 81 Va. 222; *Allen* v. *Patrick,* 97 Va. 521; *Hanlon* v. *Doherty,* 109 Ind. 37; *Duffy* v. *McGinness,* 13 R. L. 595; *Bank* v. *Chesney,* 87 Ill. 602; *Richardson* v. *Hockenhull,* 85 Ill. 124; *Brooks* v. *Rice,* 56 Cal. 428.

We fail to see why the court decreed a renting of the land instead of a sale of it.   The decree recites that it appears that the rents and profits of the land would satisfy the judgment

in five years. But how does it appear? The bill alleges that it will *not* rent for enough in five years; the answers of Saunders and Simpson deny this and there is no proof on the question, it is true. But, notwithstanding there is no proof, the bill is taken for confessed as to Rhodes, the owner of the land. It would, therefore, seem that the finding of the court should have been to the contrary, at least, so far as Rhodes is affected by the question of the rental value; and it is on the owner's account that the law provides for a renting, instead of a sale, of his land.

There is no doubt that the equity of redemption, or the surplus value of the property, over and above the amount of the Simpson trust debt, is subject to plaintiff's judgment lien. But the court, instead of renting the land to pay the balance due on the judgment, should have first ascertained the amount of the Simpson trust debt, and should have sold the land to pay the two liens in the order of priority; first, the Simpson trust lien now held by Rhodes, and second, plaintiff's judgment.

Plaintiff having alleged that his judgment was the only lien against the land, and the two set up in the suit appearing to be the only ones, it was not necessary to refer the cause to a commissioner. *Anderson* v. *Nagle,* 12 W. Va. 98; *Bock* v. *Bock,* 24 W. Va. 586.

The demurrer to the amended bill was properly overruled; the bill states a proper case, and all persons interested in the land seem to have been made parties. Other errors assigned are cured by the supplemental record brought up after the appeal was granted.

The decree of the circuit court of Cabell county, rendered on the 17th of September, 1907 will be reversed, and the cause remanded for further proceedings according to the principles herein stated, and further according to the rules governing courts of equity.

*Reversed and Remanded.*