760 S.E.2d 875

**EB DOREV HOLDINGS, INC.,**
**Defendant Below,**
**Petitioner**

v.

**WEST VIRGINIA DEPARTMENT OF ADMINISTRATION, REAL ESTATE DIVISION, Plaintiff Below, Respondent.**

No. 13–0886.

Supreme Court of Appeals of West Virginia.

Submitted April 22, 2014.

Decided June 16, 2014.

---

Michael W. Carey, Esq., David R. Pogue, Esq., Carey, Scott, Douglas & Kessler, PLLC, Charleston, WV, for Petitioner.

John L. MacCorkle, Esq., MacCorkle Lavender, PLLC, Charleston, WV, for Respondent.

PER CURIAM:

The instant action is before the Court upon the appeal of the Petitioner, EB Dorev Holdings, Inc. ("EB Dorev") from a July 11, 2013, order of the Circuit Court of Kanawha County which granted the Respondent, West Virginia Department of Administration, Real Estate Division's ("WVDOA"), motion for summary judgment voiding the sale of certain tax liens purchased by EB Dorev. In this appeal, EB Dorev alleges that 1) the circuit court erred in ruling that the real properties, which were owned by private entities on July 1, 2008, were rendered exempt from 2009 real estate taxes upon the subsequent purchase of the properties by the WVDOA in August and September of 2008; 2) the circuit court erred in concluding that the tax liens at issue were extinguished through the doctrine of merger; and 3) the circuit court erred in concluding that the tax liens at issue were inchoate and never matured into liens suitable for sale. Conversely, the WVDOA asserts that while the circuit court may have erred in finding that the properties at issue were rendered exempt from the 2009 taxes upon their purchase by the WVDOA in 2008, that ruling is irrelevant to the circuit court's proper finding that the tax liens were extinguished by the doctrine of merger or were inchoate. Upon examination

of the petition, the response, the submitted appendix, and the arguments of counsel, this Court concludes that, for the reasons set forth below, the circuit court's order should be affirmed.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 2008, the real properties at issue in this appeal were owned by CRW Real Estate, LLC, So Park, LLC, and Knollwood Investments, LLC.[1] In August and September 2008, after the assessment date for the 2009 real estate taxes on the properties,[2] the subject properties were sold to the WVDOA. The 2009 real estate taxes on the properties were not timely paid, and on November 16, 2010, the Kanawha County Sheriff sold the tax liens on the properties to the Petitioner.[3]

After the tax lien sale, the Kanawha County Clerk, at the application and request of the Petitioner, sent a notice to redeem to the law firm Johnson & Lopez, PLLC, the closing attorneys for the sale of the properties at issue[4], informing the closing attorneys that if the delinquent real estate taxes were not paid in full by April 1, 2012, the Clerk would

issue tax deeds for the properties to the Petitioner. The notice to redeem was not served on the former owner in whose name the real estate tax went delinquent and was not served on the new record owner, WVDOA, as provided in West Virginia tax sale statutes. The properties were not redeemed by the April 1, 2012, redemption date. However, on March 30, 2012, the WVDOA filed a Complaint against EB Dorev and the Kanawha County Clerk, Kanawha County Sheriff, and Kanawha County Assessor and a Petition for Writ of Mandamus seeking to prevent the issuance of the tax deeds to EB Dorev.[5] Petitioner responded and asserted counterclaims and cross-claims seeking, *inter alia*, to compel the issuance of the tax deeds, to recover its attorney's fees and costs, and to recover the price they paid for the tax liens if the tax deeds were not issued.[6]

On November 16, 2012, the WVDOA filed a motion for summary judgment. Thereafter, EB Dorev filed a cross-motion for summary judgment.[7] Following a hearing on the matter, the circuit court granted summary judgment in favor of the WVDOA. The circuit court found that (1) because State properties were tax exempt, the properties were rendered exempt from the 2009 real estate taxes when they were purchased by the

---

1. The subject properties are the Plaza IV building ("Plaza IV") in South Charleston, West Virginia, and to the Cornerstone building ("Cornerstone") in Charleston, West Virginia. The sale price to the WVDOA of the Plaza IV property by South Park, L.L.C. and Knollwood Investments, L.L.C. was $3,300,000.00. The sale price to the WVDOA of the Cornerstone building by CRW Real Estate, L.L.C., was $1,930,000.00. The combined value of the properties was $5,230,000.00.

2. "Assessment date" means July 1 of the year preceding the tax year. W. Va.Code § 11–3–1(f)(1) (2010). "Tax year" or "property tax year" means the next calendar year that begins after the assessment date. W. Va.Code § 11–3–1(f)(3) (2010).

3. The WVDOA alleges that the sales contract for the properties required the sellers (the "former owners") to pay all delinquent property taxes out of the proceeds from the sales.

4. The record reveals that the County Clerk sent the Notice to Redeem for the Plaza IV building to

Sarah Lopez, Esq. in February of 2012. The Notice of Redeem for the Cornerstone building was sent to Nicholas Johnson, Esq. in February of 2012.

5. It simultaneously filed a Petition for Temporary Restraining Order which the circuit court granted by orders dated March 30, 2012, and April 24, 2012.

6. Vera McCormick, in her capacity as the Clerk of Kanawha County Commission, and Mike Rutherford, in his capacity as the Sheriff of Kanawha County, also filed an answer to the WVDOA's Complaint. Neither is a party in the instant appeal.

7. Defendants McCormick and Rutherford also filed a response to the WVDOA's motion for summary judgment.

WVDOA; and (2) the tax liens were extinguished through the doctrine of merger or, alternatively, were inchoate and thus never matured into saleable liens. The circuit court then voided the sale of the tax liens to petitioner and permanently enjoined the Clerk from transferring the properties to petitioner. Subsequently, EB Dorev timely filed the instant appeal.

## II.

### STANDARD OF REVIEW

■ "A circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). When reviewing a lower court's decision regarding summary judgment, we apply the same standard required of the circuit court. *See Cottrill v. Ranson,* 200 W.Va. 691, 695, 490 S.E.2d 778, 782 (1997) ("We review a circuit court's decision to grant summary judgment *de novo* and apply the same standard for summary judgment that is to be followed by the circuit court.") (*citing Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995)). In this regard, we have long held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Having established the proper standard for our review, we proceed with our consideration of this case.

## III.

### ANALYSIS

■ In its first assignment of error, EB Dorev alleges that the circuit court erred in ruling that the properties were rendered exempt from the 2009 real estate taxes upon the WVDOA's purchase of the properties in August and September of 2008. Specifically, EB Dorev contends that the taxes at issue in this appeal are the 2009 property taxes which were assessed on July 1, 2008, when the properties were owned by the former property owners, who, as private entities, are not entitled to tax exemption. EB Dorev asserts that the former owners were responsible for payment of the 2009 taxes on the subject properties pursuant to West Virginia Code § 11–3–1(c) (2010).[8] In response, the WVDOA concedes that the circuit court erred in finding that the properties were exempt from taxation on the date of the July 1, 2008, assessment. We agree. To the extent that the subject properties were not owned by the WVDOA, a State agency, on the assessment date, we conclude that the circuit court's first finding, that "the property at issue was rendered exempt from the 2009 taxes upon the purchase by [the WVDOA] in 2008[,]" is contrary to law.

The exemption issue aside, the circuit court concluded that there were alternative reasons the tax lien sale should be voided. We will next address EB Dorev's assignment of error alleging that circuit court erred in concluding that the tax liens at issue were extinguished through the doctrine of merger.

The circuit court found that when the WVDOA acquired the properties in August and September of 2008, the WVDOA's lesser right as the holder of the tax liens that attached on July 1, 2008, was merged with its greater right as the owner of the properties and, as such, the liens were extinguished. In support of this merger theory, the circuit court relied on *Armstrong Products Corp. v. Martin,* 119 W.Va. 50, 192 S.E. 125 (1937), in which this Court found that where the WVDOA purchases land at a tax sale, the tax lien on the land is merged in its purchased title.

EB Dorev contends that *Armstrong* is inapplicable to the instant case because it ad-

---

**8.** West Virginia Code § 11–3–1(c) provides that "[t]he taxes upon all property shall be paid by those who are the owners thereof on the assessment date whether it be assessed to them or others."

dressed the State's purchase of land at a sheriff's sale. The circuit court also relied on a *State v. Locke*, 29 N.M. 148, 219 P. 790 (1923), in which New Mexico's Supreme Court ruled that

> when property is acquired by the State in its sovereign capacity, it thereupon becomes absolved, freed, and relieved from any further liability for taxes previously assessed against it, and which are unpaid at the time it becomes so acquired that from the moment of its acquisition the power to enforce the lien is arrested or abated. The claim of the State for such taxes becomes merged in its ownership of the fee. To consider it further burdened with such lien, and to permit it to be subsequently sold for the payment thereof, results in the State selling its own property to pay itself.

219 P. at 792. EB Dorev contends that although this Court cited to *Locke* in the *Armstrong* case, it did not expressly adopt *Locke's* doctrine of merger. Although this language in *Locke* was not a direct holding or a syllabus point in *Armstrong,* we believe it is good law and supported by our holdings in other West Virginia cases.

In *Locke,* New Mexico's Supreme Court reasoned that it is nonsensical to sell property owned by the State for delinquent taxes. 219 P. at 792. EB Dorev contends, however, that raising state funds is not the issue in the case at bar. Instead, EB Dorev argues that the issue is raising funds for local government entities, such as the Kanawha County Board of Education, by taxing private property owners. *See* W.Va.Code § 11–8–4 (1933) (purpose of assessing taxes upon real property is to fund various state, county, and municipal governments, including schools). EB Dorev also avers that rejecting *Locke* causes no undue hardship to the WVDOA because when the WVDOA buys property from private owners, it can ensure that the closing documents contain a provision requiring that a portion of the sale price be withheld to pay any outstanding taxes for the tax year following the closing.

Additionally, EB Dorev maintains that adopting the doctrine of merger would con-travene Article X, § 1 of the West Virginia Constitution which provides that "taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." EB Dorev contends that if the doctrine of merger applies, private property owners who sell to the State will be treated differently than private property owners who sell to non-State entities. EB Dorev asserts that the doctrine of merger gives an unfair advantage to the WVDOA in purchasing property because, unlike private buyers who must ensure that the seller pays any outstanding taxes, the seller who sells to the WVDOA will not have to pay those taxes. EB Dorev contends that private sellers will be more likely to sell to the State than to private owners.

Conversely, the WVDOA contends that this Court's reference to *Locke* in *Armstrong* demonstrates that West Virginia long ago recognized and applied the doctrine of merger as a valid legal principle. The WVDOA contends that the legal principles and rationale applied in *Locke* are clearly applicable to the case at bar and thus, the doctrine of merger applies in this case.

■ While we agree that the *Armstrong* case is technically distinguishable from the instant case, our review of the law on this issue reveals that this Court has previously recognized the doctrine of merger in other cases. In syllabus point 4 of *Turk v. Skiles,* 45 W.Va. 82, 30 S.E. 234 (1898), this Court held that "[w]here a greater and less estate unite in the same person, without an intermediate estate, the less at once merges into the greater." It appears to be the general rule in the United States. *See,* 51 Am.Jur.2d Liens § 64.

Subsequently, in *Sullivan v. Saunders,* 66 W.Va. 350, 66 S.E. 497 (1909), a case wherein a trust deed creditor bought the trust subject property and took a conveyance for it from his debtor, this Court again discussed the doctrine of merger. Recognizing the "general rule of law that where the holder of a lien

upon land afterwards acquires the legal title, the lien is merged into his estate and is extinguished," this Court made an exception to the rule and found that the lien at issue was not merged when the lienholder was conveyed the fee as a matter of equity to preserve the trust lien for the lienholder's protection. *Id.* at 498. The grantee's first lien was preserved in order to prevent a junior lienholder from obtaining a preferential lien against the property. *Id. See also, Tilhance Creek Investments, LLC v. BCBank, Inc.,* 2013 WL 1286130 (2013).

▮ Applying the previously recognized doctrine of merger to the case before us, we conclude that when the WVDOA, as a State agency, acquired the properties in August and September of 2008, the State's lesser right as the holder of the tax liens that attached on July 1, 2008, was merged with its greater right as the owner of the properties and, as such, the liens were extinguished. Finding no error in the circuit court's ruling on voiding the tax lien sale on this basis, we affirm the circuit court's order. Accordingly, to the extent that we conclude that the tax liens at issue were extinguished through merger upon the purchase of the property by the WVDOA, it is unnecessary to address EB Dorev's remaining assignment of error alleging that the circuit court erred in concluding that the tax liens at issue were inchoate and never matured into liens suitable for sale.

As a final matter, having concluded that the tax lien sale should be voided, we wish to address EB Dorev's assertion that the circuit court impliedly ordered the return of the purchase money that EB Dorev paid for the subject tax liens when it voided the tax lien sale. EB Dorev contends that although the circuit court's order makes no specific reference to the purchase money, it is axiomatic that if the sale of the liens is void, then EB Dorev is entitled to a refund of the money that it paid for the liens. EB Dorev requests that this Court clarify that the purchase money must be refunded to it. The WVDOA argues that the lien had been extinguished and that EB Dorev purchased nothing. The WVDOA contends that it did not redeem the property and EB Dorev is not entitled to repayment required when property is redeemed under West Virginia's tax sale statutes. In sum, the WVDOA asserts that EB Dorev gambled on purchasing a tax lien on the Courthouse steps and the gamble did not pay off. To the extent that the circuit court did not expressly address this issue below, this matter has not been thoroughly briefed by the parties on appeal, and the Kanawha County Clerk, Kanawha County Sheriff, and Kanawha County Assessor are not parties to the instant appeal, we decline to address this issue in the instant appeal, but grant leave to EB Dorev to raise this issue with the circuit court.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the July 11, 2013, order of the Circuit Court of Kanawha County granting summary judgment to the WVDOA.

**Affirmed.**

LOUGHRY, Justice, concurring:

While I agree with the majority's decision to affirm the lower court's ruling voiding the sale of the subject tax liens to EB Dorev Holdings, Inc. ("Dorev"), the majority has engaged in a tortured analysis to reach its desired result. Claiming that this Court has previously recognized the doctrine of merger,[1] the majority resolved a case of first impression through an unsigned opinion that lacks the necessary new point of law as required by our state constitution.[2] Because I

---

**1.** It is telling that even the majority acknowledges that the doctrine of merger has only been "recognized" but not adopted into this state's jurisprudence.

**2.** *See* W.Va. Const. art. VIII, § 4 (providing that "it shall be the duty of the court to prepare a syllabus of the points adjudicated in each case in which an opinion is written and in which a

believe that the majority could have reached the same result without relying on the doctrine of merger, I am compelled to write separately.

Like the majority, I agree that the circuit court erred in finding that the subject property was rendered exempt from 2009 taxes based solely on the Department of Administration's ("DOA") purchase of the properties in August and September of 2008. Because the tax period for the subject tax debt that was assessed on July 1, 2009, began on July 1, 2008, the former property owners (three holding companies that reportedly have been dissolved) were undisputedly responsible for the 2009 property taxes under this state's ad valorem property tax schema. By law, "[t]he taxes upon all property shall be paid by those who are the owners thereof *on the assessment date whether it be assessed to them or others.*" W.Va.Code § 11–3–1(c) (2013) (emphasis supplied). The tax obligation did not simply vaporize as an adjunct to the DOA's purchase of the subject property. Regardless of the sale of the subject property to the DOA, for purposes of tax year 2009, the former land owners remained liable under our tax statutes for the assessed ad valorem taxes based on their property ownership on the statutory assessment date—July 1, 2008.

In an attempt to effectively render the tax liens nonexistent, the majority looks to what it declares to be an "established" doctrine of merger. Application of this principle would require the conclusion that the state's lesser, in comparison, right as a lien holder merges into its greater right as a land owner, and the tax lien is automatically extinguished concurrent with the passing of title. Upon analysis, however, this Court has only *recog-*

majority of the justices thereof concurred"); Syl. Pt. 2, *Walker v. Doe,* 210 W.Va. 490, 558 S.E.2d 290 (2001) ("[N]ew points of law ... will be articulated through syllabus points as required by our state constitution.").

**3.** Similarly, the case of *Turk v. Skiles,* 45 W.Va. 82, 30 S.E. 234 (1898), has no precedential effect on the issue of whether a property owner should be "forgiven" statutory tax obligations merely because the State of West Virginia purchases the property.

*nized* but never formally adopted the merger doctrine into our jurisprudence. The case upon which the majority relies, *Armstrong Products Corp. v. Martin,* 119 W.Va. 50, 192 S.E. 125 (1937), held that land purchased by the state *at a tax sale* resulted in a merger of the state's tax lien into its purchased title. The logic that underlies that holding clearly does not extend to a non-tax sale purchase such as that which occurred in this case.[3] Whereas a tax sale purchase typically implies an insolvent land owner (from whom future property tax payments are highly unlikely), the seller of property in a non-tax sale, such as this case, should have had, at least in theory, the necessary funds from which to pay the yet-to-be-billed tax assessment. Typically, the moneys needed to pay for the upcoming property tax bill are set aside in escrow from the proceeds of the property sale for just this purpose.[4] Consequently, by its holding in this case, the majority has arguably eliminated the duty of all future sellers of land to the state to pay the ad valorem tax obligation that the Legislature has decreed to be their responsibility. *See* W.Va.Code § 11–3–1(c). Such a deleterious and unnecessarily reductive effect on the county and state coffers clearly could not have been the majority's intent and, yet, that is likely a potential result from prospective application of this case.

In its haste to find precedent to support the voiding of the subject tax sale, the majority has overlooked additional reasons why the merger doctrine does not apply to this case. In an eminent domain proceeding, the Legislature anticipated a payment to the circuit court of the necessary sum required to pay any tax liens as a predicate to a property transfer. *See* W.Va.Code § 54–2–18 (2008).

**4.** Because the tax bills were sent by the sheriff to the two closing attorneys, it is presumed that the necessary funds were not set aside to pay the forthcoming 2009 tax bill. If in fact this is the case, the failure to provide funds for this tax obligation at the time of closing was clearly an oversight on the parties and their respective counsel's parts.

634

As Dorev correctly argued, this enactment disproves the majority's contention that tax liens on real estate disappear with the state's acquisition of title. Dorev persuasively reasoned that "[i]f the State cannot take title to property without ensuring the satisfaction of existing tax liens when exercising powers unique to government, then surely it cannot do so when it stands in the same position as any other buyer on the open market."

Yet another reason to reject the application of the merger doctrine to this case is gleaned from the reasoning for such doctrine as discussed in *State v. Locke*, 29 N.M. 148, 219 P. 790 (1923), a case cited in *Armstrong* and heavily relied upon by the DOA. As support for the merger doctrine, the Supreme Court of New Mexico elaborated:

> The object of taxing property is to produce the revenues with which to conduct the business of the state; it is entirely inconsistent with our theory of government for the property of the state to be taxed, or sold for taxes, in order to produce the money to be expended by the state. Such a procedure is but taking the money out of one pocket and putting it in the other. Another consideration, which should not be overlooked, is that if public property, ... is to be burdened with a tax lien, the public might lose it entirely through oversight or carelessness....

*Id.* at 792. In seeking to distinguish *Locke*, Dorev argued that the rationale for adopting the merger doctrine was the prevention of nonsensical monetary transfers from one state coffer to another. Because our ad valorem property taxes are exponentially used in greater proportions for non-state taxing units, with the largest share going to county boards of education,[5] Dorev advocated not only that the merger doctrine was inapplicable under the rationale of *Locke* but also that

---

5. *See* W.Va.Code §§ 11-8-4 to -6(d) (2013).

6. It is important to consider that not every property sale to the state will involve a judgment proof seller, as is purportedly the case here. Yet, in every property sale involving the state, the majority's opinion will effectively extinguish the seller's obligation to pay the ad valorem taxes

its application would defeat the legislative purpose underlying the statutory tax lien procedures. *See* W.Va.Code § 11A-3-1 (2010) (recognizing necessity of statutory tax lien sale mechanism for providing "regular tax income ... particularly for school purposes").

While the distinction Dorev seeks to make fails on one hand, it succeeds on another. That the larger recipient of ad valorem tax receipts is a county entity instead of a state agency does not, of its own, defeat the basis articulated in *Locke* for relieving states from the unwanted effects of a tax lien sale. What the attempted distinction does, however, is to underscore the need to preserve these tax dollars rather than discarding the taxpayer's obligation to pay its ad valorem tax bill in one fell swoop simply because the state, rather than a private entity, is the buyer of the property.[6] While the objective of preventing the loss of public property through tax lien sales is certainly a laudable objective, there are other ways of securing that goal.

Inherent in our existing tax laws is a mechanism by which a sheriff can suspend a tax sale. Pursuant to West Virginia Code § 11A-3-7(a) (2010),

> Whenever it shall appear to the sheriff that any real estate included in the list has been previously conveyed by deed and no tax thereon is currently delinquent, or that the tax lien thereon has been sold previously and not redeemed, or that the *tax lien thereon ought not be sold for the amount stated therein, he shall suspend the sale thereof and report his reasons therefor to the county commission and to the Auditor.*

*Id.* (emphasis supplied). As this statutory provision makes clear, the Kanawha County sheriff had the authority to recognize the

accruing, but not yet legally assessed, as part of that sale. In so doing, the majority has effectively reduced the tax burden of solvent taxpayers lucky enough to sell their property to the state and correlatively decreased the tax receipts of the affected public bodies.

financial lunacy of allowing property worth more than $5,000,000,000 to be purchased for $57,000 in tax liens. Clearly, the Legislature foresaw the need to permit a sheriff to suspend a tax lien sale when the inadvisability of permitting that sale to proceed is made evident. A case such as this, where the amount of the tax liens is exceedingly disproportionate in comparison to the value of the property, is arguably one such scenario where a suspension would be statutorily warranted.[7]

Rather than choosing to void the subject tax sale under the merger doctrine, the circuit court could have set the sale aside by finding that the sheriff abused his discretion in failing to suspend the tax sale pursuant to his clear statutory authority. *See id.* Given the current ownership of the property by the state combined with the absurdity of allowing this patently inequitable tax sale to go forward, a suspension was clearly required. Not only would Dorev be getting two pieces of property at considerably less than bargain basement prices, but it is worth recognizing that one additional consequence of the sale would have been the displacement of numerous state workers. Instead of trying to make an existing tax obligation vanish,[8] the interests of this state would have been better served had the majority turned its focus to addressing why state-owned properties are not subject to sale through the statutory tax lien procedures.[9] Accordingly, I respectfully concur.

---

7. As the majority makes clear, Dorev is entitled to a refund of the amount it paid to purchase the subject tax liens.

8. Critically, the tax obligation for 2009 still exists. Given the undisputed ownership by the former land owners on July 1, 2008, combined with the clear statutory tax obligation based on property ownership on such date, a tax obligation remains. *See* W.Va.Code § 11–3–1(c). The majority has utterly failed to consider the

harmful effect to the county of much needed tax funds as a result of its ruling that the tax lien merged at the time of the sale. As demonstrated herein, that tax obligation did not vaporize with the sale; it remains due and owing to this date.

9. Perhaps this is a matter for our Legislature to pursue.