# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

2023 Fall Term

_____

No. 22-ICA-243

_____

FILED

**November 16, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

JAY FOLSE,
Petitioner Below, Petitioner,

v.

G. RUSSELL ROLLYSON, JR. and
JOHN MCCUSKEY, JR.,
Respondents Below, Respondents.

_____

Appeal from the Circuit Court of Marshall County
Honorable Jeffrey Cramer, Judge
No. 22-P-30(C)

REVERSED AND REMANDED

_____

Submitted: September 6, 2023
Filed: November 16, 2023

Robert W. Bright, Esq.
Middleport, Ohio
Counsel for Petitioner

David P. Cook, Jr., Esq.
MacCorkle Lavender, PLLC
Charleston, West Virginia
Counsel for the Respondents

JUDGE SCARR delivered the Opinion of the Court.
CHIEF JUDGE GREEAR concurs in part and dissents in part and reserves the right to file a separate opinion.

SCARR, Judge:

Petitioner, Mr. Jay Folse, appeals the October 13, 2022, "Order Granting Respondents' Motion to Dismiss" entered by the Circuit Court of Marshall County dismissing his petition pursuant to West Virginia Code § 11A-3-60. Mr. Folse's petition sought to compel G. Russell Rollyson, Jr., the Deputy Commissioner of Delinquent and Non-entered Lands ("Deputy Commissioner"), an agent of John McCuskey, Jr., the West Virginia State Auditor ("State Auditor") to issue a tax deed for a property encumbered by a tax lien Mr. Folse had purchased. In that order, the circuit court concluded that, despite the existing tax lien and sale thereof, the owner Mr. Stanley Lahew validly conveyed his property interest in Lot 37 to the City of Cameron ("City"). The circuit court also held that the City's status as a municipal government extinguished the tax lien Mr. Folse purchased through the doctrine of merger. On appeal, Mr. Folse argues that the circuit court erred in finding that Lot 37's tax lien merged into its title because the property and the tax lien were held by different entities, and that the Deputy Commissioner was without authority to determine whether Lot 37 was tax-exempt.[1]

For the reasons discussed below, this Court reverses the October 13, 2022, "Order Granting Respondents' Motion to Dismiss" entered by the Circuit Court of

---

[1] At oral argument on September 6, 2023, counsel for Mr. Folse referenced and discussed for the first time the case *State ex rel. Southland Properties, LLC v. Janes*. The Court treated that as a supplemental briefing and directed respondents to file a response to this supplemental brief and allowed Mr. Folse to file a reply. Respondents filed their response, but Mr. Folse failed to file a reply.

1

Marshall County and remands with instructions to enter an order consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At a tax sale on October 29, 2021, Mr. Jay Folse purchased a delinquent tax lien on a piece of property known as LOT 37 Crawford ADD, CAMERON CORP district ("Lot 37"), located in the City of Cameron, in Marshall County. As required, Mr. Folse paid $50 towards the tax lien, which was approximately $892. By a letter dated November 1, 2022, the Deputy Commissioner informed Mr. Folse that his purchase had been approved by the State Auditor and described the next steps he would have to take in order to secure issuance of the tax deed pursuant to West Virginia Code § 11A-3-52 (2020). As part of these steps, Mr. Folse had to submit a list of the names and addresses of the parties to whom the State Auditor was to have the Deputy Commissioner send a notice to redeem Lot 37. The deadline for Mr. Folse to submit this information to the State Auditor was December 16, 2021.

Mr. Folse complied with the notice requirements and the Deputy Commissioner successfully served the delinquent property owner, Stanley D. Lahew, with a notice to redeem Lot 37 on January 31, 2022. The notice indicated that Mr. Lahew had until March 23, 2022, to redeem the property. After that date, the Deputy Commissioner could issue Mr. Folse a tax deed for Lot 37 upon his request and payment of the balance of

Lot 37's tax lien and associated costs. Mr. Lahew failed to redeem Lot 37 by March 23, 2022. By letter dated April 6, 2022, the Deputy Commissioner notified Mr. Folse that Mr. Lahew had been properly served and enough time had passed, allowing Mr. Folse to acquire the tax deed to Lot 37 upon his request and the required payment. The letter to Mr. Folse also included an invoice for the costs to prepare and issue the tax deed and pay the remainder of Lot 37's tax lien. The letter stated in bolded text "I am not permitted to execute a deed before April 6, 2022, or after July 21, 2022." No deadlines besides that window of time between April 6 and July 21 were provided in the letter. The letter finished by re-iterating the July 21, 2022, deadline, once again in bolded text.

However, on May 17, 2022, prior to Mr. Folse's payment or the tax deed's issuance, the Deputy Commissioner received a facsimile transmission from the City reflecting that Mr. Lahew had executed a quitclaim deed on that same day, transferring his interest in Lot 37 to the City. By a letter dated May 24, 2022, the Deputy Commissioner informed Mr. Folse that his purchase of Lot 37's tax lien was being set aside, and that his purchase money was being refunded due to the City's ownership of Lot 37. It must be noted that the transfer of Mr. Lahew's interest to the City occurred after Mr. Folse's rights to request the tax deed and pay Lot 37's tax lien had accrued, and the setting aside of the purchase was 58 days before the July 21, 2022, deadline for Mr. Folse's payment and deed request.[2]

---

[2] The record before this Court does not explicitly state whether Mr. Folse had yet paid the final amount when he received the letter setting aside his purchase. Because the

Mr. Folse disputed the validity of Lot 37's conveyance to the City with its counsel and the State Auditor's office. On July 5, 2022, Mr. Folse, self-represented, filed the underlying petition against the Deputy Commissioner and the State Auditor ("Respondents"), asking the circuit court to compel the issuance of a tax deed for Lot 37 pursuant to West Virginia Code § 11A-3-60. Mr. Folse argued that the quitclaim deed conveying Mr. Lahew's interest had no bearing on his purchase, and that he was still entitled to a deed for the property notwithstanding its transfer to the City. Mr. Folse also sought costs and fees of the proceeding, damages, and a jury trial.

In response, Respondents filed a motion to dismiss the petition pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. In their motion, Respondents argued that Mr. Folse's relief was limited to the express language of West Virginia Code § 11A-3-60 and must be based on the Deputy Commissioner's refusal to perform certain enumerated functions, such as issue a tax deed, and there was not a refusal to issue a tax deed here because Lot 37's tax lien was extinguished by the City's acquisition. Respondents argued Lot 37's tax lien was extinguished based on the doctrine of merger, which establishes that when property is acquired by the state in its sovereign capacity, it becomes absolved from any liability for unpaid taxes previously assessed against it at the time of its acquisition. In support,

letter to Mr. Folse from the Deputy Commissioner stated that his deed would be issued upon payment of an enclosed invoice, this Court will proceed as if he had not yet paid the final amount needed for issuance of the deed. It would make little sense for Mr. Folse to pay the invoice, yet not request the deed. *See pet'r's. App.*, AR21–22.

4

Respondents cited *EB Dorev Holdings Inc. v. W. Va. Dep't of Admin.*, 236 W. Va. 627, 630-632, 760 S.E.2d 875, 878-880 (2014), which applied merger to absolve tax liens against properties acquired by a state agency, the West Virginia Department of Administration, Real Estate Division.

Based upon its review of the record, the circuit court entered an order on October 13, 2022, granting Respondents' motion to dismiss with prejudice. The circuit court found that the Deputy Commissioner had not refused to perform any required statutory duty under § 11A-3-60, and that pursuant to the statute, "if upon review of such application, the [circuit court] is of the opinion that the [p]etitioner is not entitled to the deed requested, the [p]etition shall be dismissed." W. Va. Code § 11A-3-60. The circuit court also found that because there had been no refusal on the part of the Deputy Commissioner, Mr. Folse was not entitled to costs of the proceeding, that no additional "damages" were contemplated by W. Va. Code § 11A-3-60, Mr. Folse did not have a right to a jury trial, nor to conduct discovery, and that no additional remedies or claims can exist outside of the language of § 11A-3-60.

On the merits, the circuit court concluded that the tax lien on Lot 37 was extinguished by merger into the property's title when the City acquired the property. The circuit court reasoned that the merger doctrine had been recognized in West Virginia, and noted that in other jurisdictions, tax liens are extinguished when property is acquired by a state or its political subdivisions, and applied that rule to Lot 37's tax lien. Of final note,

5

the circuit court found that the real dispute regarding title to the property, if any, is between Mr. Folse and the City, not Respondents. This appeal followed.

## II. STANDARD OF REVIEW

The Supreme Court of Appeals of West Virginia has held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." *Young v. State*, 241 W. Va. 489, 491, 826 S.E.2d 346, 348 (2019). When reviewing a circuit court's order granting a motion to dismiss, this Court applies a *de novo* standard of review. *Savarese v. Allstate Ins. Co.*, 223 W. Va. 119, 123, 672 S.E.2d 255, 259 (2008).

## III. DISCUSSION

West Virginia's tax lien system serves as a carrot-and-stick to encourage the important public policy of speedy and efficient payment and collection of property taxes. W. Va. Code Ann. § 11A-3-1. The stick in this statutory scheme is aimed at tax-delinquent property owners, and the carrot is the opportunity for a purchaser to acquire property cheaply by purchasing the tax lien and paying the taxes.

6

A brief synopsis of the tax lien process is needed to understand the case before us.[3] Unpaid property taxes become a lien on the property, and these tax liens can be sold, providing the State with another avenue to receive the taxes owed on the property. W. Va. Code Ann. §§ 11A-1-2, 11A-2-10. Property tax delinquencies are examined and certified by the county sheriff, the county commission, and finally the State Auditor. *Id.* at §§ 11A-2-14, 11A-3-8. It is only after the State Auditor's certification that a property encumbered by a tax lien can be sold at auction. *Id.* at §§ 11A-3-42, 11A-3-45. Anytime throughout this process, the taxes assessed against the property may be paid, redeeming it. *Id.* at 11A-3-47. The owner, lienholder, or "any other person entitled to pay the taxes" of the property has the right to redeem. *Id.*

After a tax lien on a property is sold to a purchaser, the sale is reported to and approved by the State Auditor. *Id.* at § 11A-3-51. Upon that approval, the purchaser must, within 120 days, prepare a list of those to be served notice and send it to the State Auditor, who then provides notice to the listed parties.[4] *Id.* at §§ 11A-3-52, 11A-3-55. The notice

---

[3] It should be noted that the tax lien statutory scheme is frequently modified, and the sale of Lot 37 on October 29, 2021, actually occurred before the most recent alternations to these statutes, which was July 10, 2022. *See e. g., Id.* at §§ 11A-3-5–7, 11A-3-14–31. However, none of the tax lien statutes that were modified or repealed were determinative in this case.

[4] Tax lien cases typically arise over this step in the process, particularly whether all the parties entitled to notice were properly provided with notice. *See, e.g., Reynolds v. Hoke*, 226 W. Va. 497, 499, 702 S.E.2d 629, 631 (2010); *Archuleta v. US Liens, LLC*, 240 W. Va. 519, 520–21, 813 S.E.2d 761, 762–63 (2018); *Mason v. Smith*, 233 W. Va. 673,

informs the party of the tax lien's purchase, their right to redeem the property, and that the purchaser can take ownership of the property unless they redeem. *Id.* at § 11A-3-54. Once the notices have been mailed or published, the purchaser's right to the deed accrues in 45 days. *Id.* at § 11A-3-55. After the purchaser's right accrues, they can then pay the remaining tax lien and fees and request a deed's issuance within 120 days. *Id.* at § 11A-3-59. Upon the purchaser's request, a quitclaim deed for the property is issued by the Deputy Commissioner to the purchaser, who acquires such title as was held by "any person who was entitled to redeem," such as the previous owner. *Id.* at §§ 11A-3-59, 11A-3-62. At any point before the tax deed is issued to the purchaser, the property can be redeemed by the owner, or anyone entitled to pay tax on the property. *Id.* at § 11A-3-56. Although the tax lien system is administered by the State Auditor, who is acting as the State Commissioner of Delinquent and Nonentered Lands, most of the county level functions are carried out by the State Auditor's appointed county-level agent, the Deputy Commissioner of Delinquent and Nonentered Lands. *Id.* at §§ 11A-3-33, 11A-3-34(d).

Some practical effects of this system are relevant to this case. The 45-day period after notice has been provided to the property owner before the purchaser's right to the deed accrues serves as a window of time for the owner to redeem without worry that the purchaser will acquire the deed to their property. This window of time will be referred

674–75, 760 S.E.2d 487, 488–89 (2014). However, the record here establishes that the notice requirements were satisfied and thus are not at issue here.

8

to as the "protected redemption period." After the protected redemption period expires, the owner can still redeem the property under § 11A-3-56, even though the purchaser's right to the deed has accrued. Once the purchaser's right accrues, there is essentially a race between the purchaser to pay in full and request the deed, and the owner to redeem, with the winner acquiring or maintaining title to the property. The tax lien system's purpose of encouraging quick and efficient tax payment and collection is apparent, as both the purchaser's right to the deed and the owner's right to redeem require payment.

In the instant case, things were proceeding as normal in Mr. Folse's purchase of Lot 37's tax lien up until Mr. Lahew executed a quitclaim deed to the City, which claimed that merger extinguished Lot 37's tax lien, and on this basis, the Deputy Commissioner *sua sponte* set aside Mr. Folse's purchase.[5] We find the fact that the Deputy Commissioner effectively decided this issue of merger and title on his own to be troubling, but this will be addressed separately. First, we must analyze the effectiveness of Mr. Lahew's conveyance, which occurred after the end of the protected redemption period and Mr. Folse's right to the deed had accrued. However, the conveyance did occur before Mr. Folse paid and requested the deed's issuance. At this unique stage of the tax lien process, does an owner have the right to convey? Although our precedent arguably does not directly

---

[5] It bears note that curiously, the deadlines provided by the parties in the record do not appear to match the statutory deadlines. However, these deviations are not outcome determinative to the issues raised in this case, the effectiveness of Mr. Lahew's conveyance, and whether merger applied to Lot 37's tax lien.

speak to this issue, the underlying principles and reasoning in our precedent leads us to conclude that such an owner does not.

We find the 2018 Supreme Court of Appeals of West Virginia case *State ex rel. Southland Properties, LLC v. Janes* to be particularly influential here. 240 W. Va. 323, 811 S.E.2d 273 (2018). In that case, Southland Properties, LLC ("Southland") failed to pay its taxes on two lots and the tax liens on the properties were sold to the same purchaser. *Id.* at 325, 275. When the purchaser's right to the deeds accrued, Southland declared bankruptcy, precluding the Deputy Commissioner from delivering the deeds to the purchaser because the properties were part of the bankruptcy estate. *Id.* Thus the sale was subject to an automatic stay pursuant to 11 U.S.C. § 362. *Id.* After the bankruptcy proceeding had ended, the Deputy Commissioner refused to issue the deeds to the purchaser, because the statutory 30-day window for the deeds' issuance had expired. *Id.* at 326, 276.[6] The purchaser petitioned to compel issuance of the deeds, and Southland moved to intervene as an indispensable party. *Id.* The circuit court denied Southland's motion, and Southland appealed. *Id.*

The court held in *Southland Properties* that although Southland owned and had title to the properties and retained the right to pay the delinquent taxes at any point

---

[6] It is noteworthy that the 30-day window statute cited in *Southland Properties* was no longer in effect during the relevant period of Mr. Folse's case.

10

prior to the deeds' delivery to the purchaser, they were not an indispensable party. *Id.* at 333, 283. The court's rationale was that Southland was not an indispensable party because it had not redeemed the properties. *Id.* at 332, 282. "Southland, of course, owned the delinquent properties until such time as the deeds were delivered to Mr. Jones, but the nature of that ownership was inextricably tied to, and was solely predicated upon, redemption of the properties." *Id.* at 331, 281. In the absence of redemption, the purchaser's petition to compel issuance of the deed did not affect Southland's sole interest in the properties, which was redemption. *Id.* at 332–33, 281–82.

Although the underlying proceedings were different than in *Southland Properties*, we consider it instructive since both cases were decided based on the nature of a tax-delinquent property owner's title after the protected redemption period. Title to the property remains with the tax-delinquent owner until the purchaser completes the tax lien process and secures the deed. *Ancient Energy, Ltd. v. Ferguson*, 239 W. Va. 723, 728, 806 S.E.2d 154, 159 (2017). However, despite the tax-delinquent owner's title, the nature of that title is "drastically" different than that of normal ownership. *Southland Properties*, 240 W. Va. at 331, 811 S.E.2d at 281. The ownership rights of a tax-delinquent property owner are greatly diminished from ordinary ownership, being inextricably tied to, and solely predicated upon, redemption. *See id.*

11

This lessened tax-delinquent ownership is reflected in the fact that redemption is a prerequisite to initiating an action to set aside an improper tax lien deed or sale. *Id. See* W. Va. Code Ann. §§ 11A-4-3, 11A-4-4. How tax liens were handled in the past offers more evidence of this diminished ownership. Prior to 1994, the State held title prior to the deed's conveyance to the purchaser, and this process was only changed to avoid constitutional due process issues. *Southland Properties*, 240 W. Va. at 331 n.25, 811 S.E.2d at 281 n.25 (quoting *Mingo Cnty. Redevelopment Auth. v. Green*, 207 W. Va. 486, 494 n.24, 534 S.E.2d 40, 48 n.24 (2000)). Additional evidence of the diminished property interest of a tax-delinquent owner can be found in our mineral rights law, where a delinquent taxpayer lacks the right to sue for trespass and conversion without redemption. *Belcher v. Greer*, 181 W. Va. 196, 198, 382 S.E.2d 33, 35 (1989). *Harper v. Smith* used *Belcher* as the basis for a decision regarding real property tax liens, so our precedent supports using mineral rights as a guidepost in tax lien cases. 232 W. Va. 655, 659–660, 753 S.E.2d 612, 616–617 (2012).

We hold that a tax-delinquent property owner, after the end of the protected redemption period and the purchaser's right to the deed accrues, only has the right to redeem their property, not to convey. Our tax lien system is a carrot-and-stick system to ensure that property taxes are paid. To allow a tax-delinquent property owner to convey their property after the tax lien purchaser's right to the deed had accrued would sour the carrot and shorten the stick.

Turning now to how this diminished tax-delinquent ownership affected Mr. Lahew's conveyance, we conclude that when Mr. Lahew executed the quitclaim deed to the City, the conveyance was ineffective. As the protected redemption period had ended and Mr. Folse's right to the deed for Lot 37 had accrued, Mr. Lahew's ownership of Lot 37 was inextricably tied to, and solely predicated upon, redemption. Without redemption of Lot 37, Mr. Lahew did not have the right to convey the property to the City, thus the May 17, 2022, conveyance was ineffective. In *Southland Properties*, the court held that the owner did not have an interest to intervene in the purchaser's action to compel issuance of the deeds, which would entirely *divest* the owner of title and any remaining interest in the properties. If a non-redeeming owner does not have a sufficient property interest to participate in proceedings that would result in their own divestment, it is only logical to conclude that their interest does not include the right to convey.

Respondents argue that because Mr. Lahew still had title to Lot 37, he could still convey his interest to the City, citing *Koontz v. Ball*, 96 W. Va. 117, 122 S.E. 461 (1924), for the proposition that Mr. Lahew still had title to Lot 37. Respondents also argue that *Southland Properties* is not applicable here because it concerned an owner's right to intervene in a § 11A-3-60 proceeding, not a right to convey. Therefore, Respondents argue that because Mr. Lahew still had title, he could still convey his interest in Lot 37 to the City, and *Southland Properties* is not controlling here.

13

These arguments miss the mark. Mr. Lahew's ownership of Lot 37 is not disputed. Pursuant to § 11A-3-56, a tax-delinquent owner plainly retains title until the tax deed is issued. However, as previously discussed, the nature of that ownership is inextricably tied to and solely predicated upon redemption. Not all property interests were created equal; the existence of the tax-delinquent owner's title itself does not obviate limitations on their right to convey.

Respondents correctly note that, unlike in *Southland Properties*, the purchaser here had apparently not yet taken all the needed steps to complete his purchase, paying the remaining balance and requesting the deed's issuance. However, this distinction is not outcome determinative, as the crux of the analysis in these cases is the nature of the tax-delinquent owner's property interest when the purchaser's right to the deed has accrued, but before the deed is issued. In both cases, the title held by the owner was the same; the rights to the deed had accrued in both purchasers due to the end of the protected redemption period, and neither purchaser had been issued their deed. Section 11A-3-56 provides that the delinquent owner can redeem the property until the deed's issuance; that right of redemption does not cease when the purchaser's right accrues nor even when the purchaser requests the deed. W. Va. Code Ann. § 11A-3-56(a). Thus, the full rights and interests of the owner and purchaser only change upon the deed's issuance. *See id.* Because the deeds were unissued both here and in *Southland Properties*, both Mr. Lahew and Southland held the same diminished ownership that was inextricably tied to, and was solely

14

predicated upon, redemption of the properties. *See Southland Properties*, 240 W. Va. at 331, 811 S.E.2d at 281. Clearly, the owners had the right to redeem their property but could do little else.

This conclusion is in accordance with the purpose of the tax lien system and harmonizes with its procedures. The tax lien is a carrot-and-stick system designed to incentivize quick and efficient payment and collection of property taxes. W. Va. Code Ann. § 11A-3-1. Allowing a tax-delinquent owner to convey their property out from under a tax lien purchaser would only serve to frustrate that system, potentially interjecting a conveyance-receiving interloper into what was otherwise a matter between the property owner, the purchaser, and the state. Tax-delinquent property owners could convey their property to another to avoid its forfeiture or even for profit, and this says nothing of the uncertain result of such a conveyance to one of the many tax-exempt entities, both public and private. A tax lien purchaser faced with such a situation would either be forced to forgo their purchase, and its associated costs, or fight a costly legal battle over the conveyance. Such a conveyance also introduces constitutional issues, as a third party receiving the conveyance would likely be an "interested party" with a due process right to actual notice, yet they are unlikely to receive it because the purchaser's search for "interested parties" would likely have occurred before the conveyance. *See* Syl. pt. 1, *Lilly v. Duke*, 180 W. Va. 228, 228, 376 S.E.2d 122, 122 (1988); W. Va. Code Ann. § 11A-3-52. These issues

would deter the purchase of tax liens, and introduce uncertainty and delay in the process, frustrating the tax lien's *raison d'etre*, the quick and efficient payment of property taxes.

Respondents argue that because the City is a governmental entity, the tax lien on Lot 37 is extinguished by the doctrine of merger, citing *EB Dorev Holdings, Inc. v. W. Virginia Dep't of Admin., Real Est. Div.*, 236 W. Va. 627, 760 S.E.2d 875 (2014). Although this argument fails to adequately contend with the serious distinction between tax lien merger as applied to a state agency and a municipal government, we need not reach the issue of merger in this case. As described above, we hold that the conveyance of Lot 37 to the City was ineffective, therefore a full analysis and decision on whether merger applies here is unnecessary.

We are also troubled by some of the procedural elements of this case. After Mr. Lahew executed his quitclaim deed to the City, it sent a facsimile of the deed to the Deputy Commissioner. Upon receipt of the deed, the Deputy Commissioner, apparently on his own initiative, set aside Mr. Folse's purchase of the tax lien on Lot 37. Although ancillary to the dispositive issue of Mr. Lahew's ineffective conveyance, we believe it bears addressing that the Deputy Commissioner effectively decided the legitimacy of the conveyance, and whether the merger doctrine applied here. In doing so, the Deputy Commissioner placed himself in the role of the courts, acting outside of the scope of his authority to administer the tax lien process.

The State Auditor's job is, predictably enough, to audit and compile financial reports for the governmental bodies, departments, and agencies of the State of West Virginia. W. Va. Code Ann. § 4-2-4. In addition to this, the State Auditor serves as the State Commissioner of Delinquent and Nonentered Lands, and he is performing in that capacity when administering the tax lien process. *Id.* at § 11A-3-33. In this capacity, the State Auditor is empowered and charged to "administer and carry into execution" the laws concerning delinquent properties, and to "exercise all other powers incident to the powers and duties conferred upon him by this article." *Id.* Plainly, the State Auditor is empowered to execute the tax lien process, but deciding who holds title to a property is outside of the auditor's duty to administer tax liens. Decisions regarding the title of real property are the purview of the circuit court, which is empowered with:

> general jurisdiction in all cases in equity, including jurisdiction in equity to remove any cloud on the title to real property, or any part of a cloud, or any estate, right or interest in the real property, and to determine questions of title with respect to the real property

W. Va. Code Ann. § 51-2-2. The Deputy Commissioner is appointed by the State Auditor and serves as their agent in the county of their commission, and is charged to do "whatever is required by the auditor or by the provisions of this article." *Id.* at § 11A-3-34(d). The Deputy Commissioner is thus empowered to administer the tax lien process in their county as the State Auditor would, subject to the direction and control of the State Auditor. *Id.*

Here, the Deputy Commissioner, in setting aside Mr. Folse's purchase, put himself in the role of the circuit court, by *sua sponte* deciding that the City had title to Lot

17

37, and that merger applied to that title. The powers and jurisdiction of governmental entities are tailored by statute, and § 51-2-2 gives the circuit courts jurisdiction over matters concerning real property. Although § 51-2-2 does not confer sole or exclusive jurisdiction over property matters to the circuit courts, alternative means of resolving property disputes, such as arbitration, are also given this power by their own statutory authorization. *See Golden Eagle Res., II, L.L.C. v. Willow Run Energy, L.L.C.*, 242 W. Va. 372, 379–380, 836 S.E.2d 23, 30–31 (2019). Although § 11A-3-33 conferred upon the State Auditor, and thus the Deputy Commissioner, the authority and powers to administer tax liens, we believe that deciding the title for Lot 37 was not among those powers. We are not deciding this case on the grounds that the Deputy Commissioner exceeded his authority, but here he did so nonetheless.

Having concluded that Mr. Lahew's conveyance of Lot 37 to the City was ineffective and thus his tax lien purchase was improperly set aside, we turn now to what remedy is proper. Mr. Folse originally filed a § 11A-3-60 "Motion to Compel Issuance of a Tax Deed" with the circuit court, and now seeks the issuance of a tax deed for Lot 37, damages for the refusal to issue the tax deed, and the costs and fees of the proceedings. The tax lien scheme is a creation of statute, and where the legislature has provided a remedy at law, equitable or extraordinary forms of relief are inappropriate. *State ex rel. Ayers v. Cline*, 176 W. Va. 123, 128–129, 342 S.E.2d 89, 94 (1985). We are thus restrained to only grant Mr. Folse whatever relief our statutes make available to him.

18

Accordingly, Mr. Folse's request for damages cannot be granted, as general damages are not contemplated in § 11A-3.[7] The costs and fees of a § 11A-3-60 petition are generally paid by the applicant, even when the petition is meritorious. W. Va. Code Ann. § 11A-3-60. The only exception where the applicant is awarded costs and fees is when the court finds "that the failure or refusal of the deputy commissioner was without reasonable cause." *Id.* Here, the Deputy Commissioner's actions were not "without reasonable cause," as he reasonably applied his interpretation of the facts and law to Mr. Folse's tax lien purchase. Although we conclude that the Deputy Commissioner was wrong, and even exceeded his authority, we cannot say that he acted without reason. Thus, Mr. Folse's request for the costs and fees of the legal proceedings is denied.

The relief prescribed for a § 11A-3-60 petition is an order compelling the issuance of the deed that was wrongfully refused to the petitioner. *Id.* However, that would not be the appropriate relief in this case, as Mr. Folse has not taken the final steps of requesting and paying for Lot 37's deed. Section 11A-3-60 clearly presumes that the petitioner has taken those final steps, as the statute refers to the petitioner as "the person requesting the deed." *Id.* An order compelling the issuance of a deed for Lot 37 to Mr.

---

[7] Section 11A-3-67 imposes a small monetary penalty for a state officer who refuses to perform their statutory duties, but Mr. Folse does not invoke this statute.

Folse without his payment and request of the deed is also plainly an inappropriate result for a process designed to incentivize property tax payment.

However, despite his failure to pay and request the issuance of Lot 37's deed, Mr. Folse was still correct to file a § 11A-3-60 petition, as such a motion is appropriate "[i]f the deputy commissioner fails or refuses to prepare and execute the deed." *Id.* Here, although Mr. Folse had not taken those last steps, the Deputy Commissioner's letter setting aside his purchase was a clear preemptive refusal to prepare and issue Lot 37's deed, making Mr. Folse's § 11A-3-60 petition proper. At the time Mr. Folse received notice that his purchase had been set aside, he still had 58 days to pay and request Lot 37's deed, while the owner, Mr. Lahew still had the right to redeem.

We conclude that the appropriate relief here is a return to the *status quo ante*. Accordingly, we reverse and remand with instructions for the lower court to enter an order setting aside Mr. Lahew's ineffective conveyance of Lot 37 to the City of Cameron and granting Mr. Folse 58 days to pay for and request the deed to Lot 37 pursuant to § 11A-3-59. During this time, Mr. Lahew will retain his § 11A-3-56 right to redeem Lot 37 until the deed's issuance. Mr. Folse's requests for monetary relief, for damages and costs and fees, are denied. We conclude that this result most succinctly accords with the purpose and function of the tax lien system, equitably places the parties in the position they were in

before the wrongful conveyance of Lot 37, and protects the tax lien carrot-and-stick system from interference due to third party interlopers.

## IV.    CONCLUSION

For the reasons discussed above, this Court reverses the Marshall County Circuit Court's October 13, 2022, "Order Granting Respondents' Motion to Dismiss" and remands with instructions to enter an order consistent with this opinion.

Reversed and Remanded.